EASTERN DIST.
*March*, 1838.

ROBOUAM'S
HEIRS
*vs*
ROBOUAM'S EXR.

Where the wife is desirous to sell her paraphernal property, and the husband refuses his authorization, she must apply to the parish judge in the parish in which she has her domicil, who may authorize her to contract.

</div>

---

## ROBOUAM'S HEIRS *vs.* ROBOUAM'S EXECUTOR.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF NEW-ORLEANS.

Where an executor has the *seizin*, and is appointed detainer of the estate of the testator in the will, he is entitled to full commissions on *all the estate*, both on that which is unsold and the debts uncollected, when none of the latter appear to be due by insolvents.

A charge for a *round sum*, in a notary's account for taking an inventory and delivering copies, &c., is illegal, and contrary to the tariff even in succession matters, and should be disallowed by the court.

EASTERN DIST.
*March*, 1838.

ROBOUAM'S
HEIRS
*vs.*
ROBOUAM'S EXR.

The legislature cannot vest the power in the Supreme Court to *suspend* notaries in office for mal-practices, because the court would be exercising original jurisdiction, when the constitution expressly provides that its jurisdiction shall *be appellate only.*

The law does not authorize the appointment of an attorney to absent heirs, in every case. When a court is required to make such appointment, it ought to demand proof of the fact which authorizes its action: *de non apparentibus et non existentibus eadem est lex.*

So, in the case of a succession where the testator made a valid disposition of his estate by will, and appointed his executor with *seizin* thereof: *Held*, that the Court of Probates erred in appointing an attorney to absent heirs, without evidence of the existence of any.

Where there were two wills, and in the first a legacy of five hundred dollars each was given to two brothers, with a proviso, that if only one of the legatees survived the testator, he should have both legacies, and in the last will the proviso was omitted: *Held*, that it is left doubtful whether a double legacy to each was intended, and in case of doubt, the lesser quantity bequeathed will only be allowed.

This case comes before this court on an opposition made by the plaintiffs, as heirs of François Robouam, deceased, to the account rendered by Jacques Lafort, his testamentary executor. The succession amounted to twenty-three thousand two hundred and ninety-five dollars.

The plaintiffs oppose the allowance of fifteen hundred dollars to the attorney of the executor, and of seven hundred and fifty dollars to the attorney appointed to absent heirs. The first item is opposed as excessive, and the second *in toto*, because there were no absent heirs.

The item of eight hundred and ninety-eight dollars, part of the commissions of the executor, was opposed, on the ground that no commissions should be allowed on the appraised value of property unsold, and on the amount of debts uncollected. The next item is a charge of twelve dollars and twenty-five cents, by the notary, for the delivery of a legacy.

The notary made out a charge of three hundred dollars, in round numbers, for taking inventory, making copies, acts

of delivery, etc., etc., which was opposed. The last item of Eastern Dist. March, 1838. importance was two thousand dollars, in legacies paid to A. and S. Lefebvre, under provisions contained in both wills of the testator.

ROBOUAM'S HEIRS vs. ROBOUAM'S EXR.

On the trial of the case, the probate judge reduced the account of the attorney of the executor to one thousand dollars, the attorney for absent heirs to five hundred dollars, and the notary to one hundred dollars. The judgment also struck out the executor's commission on the debts and property of the succession uncollected and unsold. From this judgment the executor appealed.

*Roselius*, for the plaintiffs, urged in this court, that they had prayed to have the allowance of five hundred dollars to the attorney of absent heirs entirely stricken out; also the item or charge for delivering a legacy; and that the double legacy to A. and S. Lefebvre be reduced. The testator left no absent heirs, and an attorney could not be legally appointed to represent them, when there were none. The plaintiffs are instituted the universal heirs, and it is expressly declared there are no other heirs.

2. Where there is a valid disposition of the property by will, the judge cannot appoint an attorney of absent heirs, when all or some of the heirs are absent. *Louisiana Code, articles* 1204-5-6.

3. The legacies to A. and S. Lefebvre are repeated in both wills. The bequest is five hundred dollars to each, and in the first will, it is provided that the whole is to be given to the legatee that survives the testator. The question really is, are the legatees entitled to one legacy of a thousand dollars each, or only to five hundred dollars each under both wills?

4. Are these legacies to be considered as mere repetitions of the same bequests in the two wills, or are they to be considered distinct and separate legacies? The same bequest is in both wills, and the mention of the legacies in the second will ought to be considered only as a confirmation of the

EASTERN DIST.
March, 1838.

ROBOUAM'S
HEIRS
vs.
ROBOUAM'S EXR.

dispositions in the first one. In questions of doubt, the interpretation ought to be against the legatee. *Louisiana Code,* 1710.

*Pichot,* for the defendant, in support of the executor's account, contended, that the item of three hundred dollars, paid to the notary, should be allowed, because the evidence fully showed that his services were worth that sum.

2. The executor should have been allowed his full commissions on the estate of the testator, for the will gave him the *seizin* thereof in express terms. The executor is entitled to his commission on the whole of the property inventoried, after deducting bad debts. *Louisiana Code, articles* 1653, 1664, 1676–7.

3. The attorney for absent heirs was legally and properly appointed, and his fee should have been allowed : the evidence clearly supported it. The declaration of the testator, that he had no forced heir, cannot be taken for the fact that there are no absent heirs. This declaration is often made to evade the law. The court must be guided by the presumption of law, that a man has forced heirs, for the death of a person is never presumed until the lapse of one hundred years is shown after his birth. 2 *Martin,* 138. 9 *Martin,* 257. 5 *Martin, N. S.,* 568. 6 *Ibid.,* 96.

4. The testator in this case was only about forty-five years of age when he died, and the court was bound to presume he had forced heirs, and to appoint an attorney to represent them. *Louisiana Code, articles* 1654–5, 1204–5–6.

5. The appellees contend that the legatees, A. and S. Lefebvre, are only entitled to five hundred dollars each, because the same legacy being found in both wills, must be a repetition. There can be no doubt as to the true intention of the testator ; it results from the expressions used in the second will, in which he confirms the dispositions in the first, and then goes on to make new ones, and bequeaths the legacy again of five hundred dollars to each of these persons. Where would have been the necessity for this if he had not intended to increase the legacy ?

*Martin, J.,* delivered the opinion of the court.

The defendant is appellant from a judgment which reduces his commission as executor of the plaintiff's ancestor, and a charge which he made for the services rendered by a notary to the estate.

EASTERN DIST.
March, 1838.

ROBOUAM'S
HEIRS
vs.
ROBOUAM'S EXR.

The plaintiffs and appellees seek the amendment of the judgment, so as to have their opposition to several items in the executor's account sustained.

I. The commission was reduced on the suggestion of the plaintiffs, that "*no commission should be allowed upon the appraised value of the property unsold, nor for the amount of debts not collected.*" The court, in our opinion, erred. The Louisiana Code, 1676, provides that "an executor who has had the *seizin* of all the estate of the succession, whether he were charged to sell it or not, shall be entitled for his trouble and care, to a commission of two and a half per cent. on the whole amount of the estimate of the inventory, making a deduction for what is not productive, and for what is due by insolvent debtors." The testator appointed the defendant detainer of his goods, without any exception; *detenteur de mes biens.* 1653. He was, therefore, entitled to his commission on the unsold part of the estate, and on the uncollected debts, as it does not appear that any of these were due by insolvent debtors.

Where an executor has the *seizin,* and is appointed detainer of the estate of the testator in the will, he is entitled to full commissions on all the estate, both on that which is unsold, and the debts unsold, collected, when none of the latter appear to be due by insolvents.

II. The charge for the professional services of the notary, was correctly reduced. We refrain from examining whether it ought not to have been absolutely stricken out, because the appellee has not required this to be done.

It was grounded on the account produced by the notary, in which the estate is charged for the "inventory, copies, (démarches,) steps taken, acts of delivery made and to be made for the said succession, three hundred dollars."

A charge for a *round sum* in a notary's account, for taking an inventory, and delivering copies, etc., is illegal and contrary to the tariff, even in succession matters, and should be disallowed by the court.

Objections having been made to this account because it did not detail the services rendered, the notary amended it by writing in the margin, "will and copy, inventory and copy, including the examination of a great number of papers, three acts of deliverance of legacies and copies, one dollar and fifty cents for each signature, certifying the papers in

EASTERN DIST.
*March*, 1838.

ROBOUAM'S
HEIRS
*vs.*
ROBOUAM'S EXR. the inventoried copy of the inventory for the auctioneer, extra service &c. to the deceased and to the estate." This account was supported by the oath of two notaries, who swore that the charge was moderate; and one of them declared that " no notary makes out his account in *succession* matters according to the tariff."

If this gentleman be correct in what he last stated, his testimony presents the most melancholy and deplorable evidence of the depravity of the receivers and keepers of the muniments of our titles that was ever exhibited to a court of justice. It is the first time that we have official knowledge of it.

As we are informed that notaries disregard the tariff in *succession* matters, we must consider this affirmative as pregnant with a negative, to wit: that they do not disregard it in *other* matters. But it is difficult to discover on what grounds the disregard is viewed by them as justifiable in *these* matters.

The legislature cannot vest the power in the Supreme Court, to *suspend* notaries in office for mal-practices, because the court would be exercising original jurisdiction, when the constitution expressly provides, that its jurisdiction shall *be appellate only.* In the case of Pain *vs.* Plique et al., 10 Louisiana Reports, 318, one of the notaries who has been examined as a witness in the present case, deposed, that an act which purported to have been signed in his presence and that of two witnesses, had been signed out of the presence of any witness. We would then have exercised the power apparently vested in this court, to suspend him, had we not been clearly of opinion, that the legislature had not the right of vesting such power in us, as it could not have been exercised without citing and hearing the notary, contradictorily with the prosecutor for the state, and passing judgment on him, which would have been an act of *original* jurisdiction, violating the constitution of the state, which provides that " our *jurisdiction* shall be *appellate only.*" 1 *Moreau's Digest, page* 18. That case was one of gross negligence only, but not attended with any the least degree of turpitude either in the notary or the persons who employed him. The testimony in this case, relates to acts of legal and moral turpitude. We are told, that for the sake of sordid lucre, notaries live in daily breaches of their oaths of office, and the exercise of acts of extortion

and oppression. The apathy of our fellow-citizens may have <span style="font-variant:small-caps">Eastern Dist.</span> induced them to submit to imposition, rather than to drag *March,* 1838. delinquents before the courts. Other judges best know when it is their province to interfere. But we cannot incur the responsibility of listening to the evidence produced in this case, without expressing our utter abhorrence of the conduct of the notary to whom the witness refers.

Public officers must refrain not only from demanding, but even from receiving greater fees than are allowed by law. The excess is an ill-gotten prey, which they are legally and morally bound to return ; and courts of justice must frown on those who seek it. The heart of an officer cannot be supposed to be long pure, when his hands have ceased to be clean. The judge was without any legal evidence of the value of the notary's services, which could only be properly ascertained by a resort to the tariff. He could not allow any thing to the notary except on a detailed statement of every thing which he had done for the estate, and a reference to the tariff for the legality of his charges.

The plaintiffs and appellees made opposition to three items in the executor's account. The charge of a fee to the attorney appointed by the court to represent absent heirs ; that for the delivery of extra legacies ; lastly, of a double legacy to each of the legatees, A. and S. Lefebvre.

I. The executor had charged seven hundred and fifty dollars for the fees of the attorney. The court reduced the item to five hundred dollars, a sum which was sworn to be reasonable by three other attorneys, who deposed that the customary charge for the attorney for absent heirs was one-half of that of the attorney of the estate.

It is contended by the appellees that an attorney was improperly appointed to the absent heirs ; for it is not alleged, neither does it appear that there were any such heirs. The testator declared that he never was married, and that both his parents were dead. It is further urged that the Court of Probates ought to have required a statement of the particular services for which remuneration was sought ; evidence of their having been rendered, and of their value. The counsel

EASTERN DIST.
*March*, 1838.

ROBOUAM'S
HEIRS
*vs.*
ROBOUAM'S EXR.

for the executor has contended, that an attorney for the absent heirs ought to be appointed in every case, whether there appear to be absent heirs or not; that the declaration of the testator, that he has no forced heir, cannot be acted on by the court, lest it should result from a desire to defraud such heirs of their rights; that every man having had parents, their existence must be presumed when there is no evidence of their death, unless the extreme age of the deceased should induce the presumption, that if either of his parents exist, he or she are upwards of one hundred years of age.

The *Louisiana Code*, 1204, authorizes the appointment of an attorney to absent heirs, on the opening of a succession, of which the heirs or part of them are absent, and not represented in the state. Hence it appears, that the legislature does not authorize the appointment of an attorney to absent heirs, in every case. When the court is required to make such an appointment, it ought to demand proof of the fact which authorizes its action : *de non apparentibus et non existentibus eadem est lex.* When there is an authentic will, the heirs named therein must be presumed to be the legal heirs, even when the testator has not stated that he has no forced heirs, for they are entitled to the possession of the estate, unless it be claimed by a forced heir: nay, such heirs, if there be any, cannot claim the will to be annulled, but are only entitled to require that the testamentary disposition should be reduced so as to leave them their *legitime;* and the court cannot refuse possession of the estate to the testamentary heir, unless upon the opposition of one claiming as forced heir.

The Court of Probates was without any legal evidence of any particular service rendered by the attorney. The witnesses testify only to their belief, but not of their knowledge.

It cannot be assumed, that the attorney of absent heirs is to be compensated by one-half of the sum allowed to the attorney of the estate. If the former does his duty, his office generally expires shortly after his appointment, as the

The law does not authorize the appointment of an attorney to absent heirs in every case. When a court is required to make such appointment, it ought to demand proof of the fact which authorizes its action : *de non apparentibus et non existentibus eadem est lex.*

absent heirs, on being notified of the death of the testator, soon make their appearance, or send their powers. One of the attorneys speaks of a suit to be sustained or defended, but he does not speak of the nature of that suit, nor of the value of the matter in dispute, nor that it was a suit in which the attorney for the absent heirs was to act; neither does it appear that he did act. Upon the whole, we are of opinion, that the Court of Probates erred in appointing an attorney to the absent heirs without evidence of the existence of any; it appearing to us highly improper that every estate should be mulcted in the charges of an attorney for absent heirs, on the mere possibility of there being such an heir.

II. The plaintiffs oppose an item of twelve dollars and fifty cents for the expenses of delivering a legacy; the fee of the notary in drawing an act for the discharge of the executor. It appears to us the item ought to have been rejected, as it must be presumed to have been included in the charges allowed to the notary.

III. The testator left two wills; in the first he bequeathed to A. and S. Lefebvre a sum of five hundred dollars each, with a proviso, that if only one of those legatees survived him, he should have both legacies, *i. e.*, one thousand dollars. In the second will, the same legacies are made to these individuals, but the *jus accrescendi* is omitted. We are of opinion, that the Court of Probates erred in sustaining the legacies claimed to both bequests; for we consider *that* in the second will, as a repetition of the one in the former, modified only by the omission of the *jus accrescendi* in the latter, which leaves it at least doubtful whether the testator intended a double legacy to each legatee. The *Civil Code*, 1710, provides, that "if it cannot be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least."

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates, be annulled, avoided and reversed, and proceeding to give such a judgment as in our opinion ought to have been rendered in that court; it is

*Margin notes:*

EASTERN DIST.
*March*, 1838.

ROBOUAM'S
HEIRS
*vs.*
ROBOUAM'S EXR.

So, in the case of a succession, where the testator made a valid disposition of his estate by will, and appointed his executor with *seizin* thereof: *Held,* that the Court of Probates erred in appointing an attorney to absent heirs, without evidence of the existence of any.

Where there were two wills, and in the first a legacy of five hundred dollars each was given to two brothers, with a proviso that if only one of the legatees survived the testator, he should have both legacies, and in the last will the proviso was omitted: *Held,* that it is left doubtful whether a double legacy to each was intended, and in case of doubt the lesser quantity bequeathed will only be allowed.

EASTERN DIST.
March, 1838.

ROBOUAM'S
HEIRS
vs.
ROBOUAM'S EXR.

ordered and adjudged, that the court considers the item of one thousand five hundred and seventy-five dollars paid to widow Thevenot, is incorrect, as the note of the deceased in her favor is for one thousand five hundred dollars, and contains no stipulation to pay interest; that the item of one thousand five hundred dollars paid A. W. Pichot, Esq., attorney of the executor, be reduced to one thousand dollars; that the item in favor of P. Marsoudet, Esq., the attorney to the absent heirs, be disallowed and stricken off; that the item of three hundred dollars paid L. Feraud, Esq., notary public, be reduced to the sum of one hundred and fifty dollars; that the opposition to the item of eight hundred and ninety-eight dollars and ninety-six cents for the commission of the executor, be rejected; that the deduction of an item of one thousand and seventy-five dollars for two notes of the deceased, each for the sum of five hundred and thirty-seven dollars and fifty cents, is improperly made by the executor, from the balance due to the succession, as these notes are not yet due, and are to be paid by the said heiress; that the charge of twelve dollars and fifty cents for the expenses for the delivery of certain legacies, be disallowed and stricken off; that the item of two thousand dollars of A. and S. Lefebvre be reduced to one thousand dollars; that the other grounds of opposition not being supported by the evidence, the account of the testamentary executor be amended in conformity with this judgment, and that so amended, it be homologated and approved; the costs in both courts to be borne by the estate.