## SUCCESSION OF D'ANNA

(April 25, 1927. Opinion and Decree.)
(May 9, 1927. Rehearing Refused.)
(May 23, 1927. Writs of Certiorari and Review Denied by Supreme Court.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Building and Loan Associations—Par. 1.**

Homestead associations enjoy legislative ·favor, they are called corporations and exhibit some corporate resemblance though many legal restrictions do not affect them. They also resemble partnerships but are not held to the same responsibility. Homestead shares are called "stock", though they have little in common with the corporate stock of private corporations.

2. **Louisiana Digest—Building and Loan Associations—Par. 1; Corporations— Par. 15, 84. 89.**

The undertaking by which a stockholder in a homestead company eventually pays for "current stock" by means of small weekly payments is terminated by the death of the stockholder and his succession is a creditor of the homestead for the aggregate of the payments made plus such interest and dividends as the charter and by-laws provide. The fact that in life a written notice is required to convert the current shares into cash is immaterial. The death of the stockholder supplies such notice.

Appeal from Civil District Court, Division "A". Hon. Hugh C. Cage, Judge.

Action by Succession of Angelo D'Anna.

There was judgment for plaintiff in rule and defendant in rule appealed.

Judgment affirmed.

H. W. Robinson, of New Orleans, attorney for defendant in rule, appellant.

Theo. Cotonio, of New Orleans, attorney for plaintiff in rule, appellee.

## OPINION

WESTERFIELD, J.    Angelo D'Anna died possessed of five shares of "current stock" in the Crescent City Building and Homestead Association. His widow qualified as administratrix and ruled the homestead company into court to show cause why it should not pay the sum of $128.08, the withdrawal value of the stock at the time the deceased died.

The homestead resisted the rule on the ground that it was not a debtor of the deceased and could not be compelled to pay to administratrix the amount demanded; that deceased, alone, could obtain the cash surrender value of the stock, that stock in homesteads was like any other stock, and while administratrix could have it sold, by public or private sale, upon proper showing of indebtedness, the present proceeding was simply a rule for the payment of a debt due deceased and no showing of indebtedness was made.

The District Court made the rule absolute and the homestead appealed.

The question presented involves the nature of the deceased's interest in the "current stock". If the relation of debtor and creditor existed the administratrix was entitled to collect the sum demanded as a debt due the succession.

It is insisted that a stockholder is not, properly speaking, a creditor of the corporation in which he holds stock, and that, in this respect, the homestead and its stock-

holders are no different from any other corporations and stockholders.

But there is a great difference between corporations, in general, and homestead corporations. Homesteads, for reasons of public policy, are highly favored by the Legislature. Corporations, generally, are prohibited from issuing stock except for money, services or property actually received. Homesteads are generally exempt from usury laws. In order to confer the benefit of a vendor's lien, the Legislature expressly sanctions the criss-cross transactions, by which a borrower simultaneously sells and buys the property to be mortgaged to secure the loan. A homestead association is neither a corporation nor a partnership in the fullest sense of the words, and "courts have found it impossible to classify them accurately with other bodies". They have been variously described as mutual benefit associations, membership corporations, limited, quasi, or corporate partnerships, or as expedients resorted to for the more convenient prosecution of the particular co-partnership business for which they are organized, and as not being savings institutions or stock corporations within the meaning of certain statutes". Corpus Juris, Vol. 9, p. 922.

The act under which homesteads are organized, Act 120 of 1902, Sec. 7, provides that a member may withdraw his unpledged shares at any time by giving written notice of such intention as provided for in the act of corporation or by-laws, and shall then be entitled to receive the amount paid in by him, and such proportion of the profits as the act of incorporation or by-laws may prescribe, less all fines, charges and losses accrued, or contingent, to the time of the notice of withdrawal, as the board of directors may determine, with no interest or profits from the time of such notice; but at no time shall more than one-half of the monthly receipts be applicable to the demands of the withdrawing members without the consent of the directors.

This provision is incorporated in the charter of the appellant. Current shares are paid for at the rate of twenty-five cents a week and, when the certificate of stock issues have little or no value, the idea being to build up a credit by small installments and profits. It will be observed that upon written notice the stockholder may withdraw the amount paid in, plus profits, but counsel contends that this right was personal with the shareholder and died with him. We are of opinion that death was sufficient notice to the homestead that this particular shareholder could not complete his undertaking and was equivalent to, and had the same effect as, written notice given, in life, by one of its shareholders, of his intention to withdraw. It follows that the homestead is a debtor of the succession to the extent claimed, the amount not being disputed.

"The death of a stockholder terminates his membership; and settlement is to be made with his estate in much the same manner as though there had been a voluntary withdrawal, the withdrawal had not the estimated value of the shares being the amount payable." Corpus Juris, Vol. 9, p. 943.

To hold otherwise would lead to absurd consequences, for Section 6 of the homestead act provides:

"That if a member be in arrears for the time specified in the act of incorporation or by-laws, for dues, interest, bonus, or premium, his shares may be forfeited as provided by the act of incorporation or by-laws."

And it might as well be that the succession representative or the heirs would fail, or refuse to continue paying weekly the

small installment fixed in the charter over a period of months or years resulting in forfeiture of the stock or a sale at a sacrifice in order to avoid such consequence.

The judgment appealed from is therefore affirmed.