DYER v. DODGE

———

(January 5, 1931. Opinion and Decree.)
(February 2, 1931. Rehearing Refused.)
(March 30, 1931. Writs of Certiorari and
· Review Refused by Supreme Court.)

■■■■■■■■■■

Theo. Cotonio, of New Orleans, attorney for plaintiff, appellant.

Beard & O'Keefe and Chester A. Peyronnin, of New Orleans, attorneys for defendant, appellee, Reliance Homestead Association.

JANVIER, J. Plaintiff, having obtained judgment for $2,400, interest, et cetera, against defendant, caused garnishment to issue and among the garnishees was Reliance Homestead Association.

In answer to the interrogatories propounded to it, that association, stated that Dodge, defendant in the principal matter, and against whom the main judgment had been rendered, had "borrowed from respondent the sum of $800.00 for which he made, subscribed, and delivered to respondent, his promissory note dated on said day and payable 90 days after date. That, in making said loan, said W. R. Dodge pledged as security for said loan and the payment of said note, to respondent, the said 10 shares of stock aforesaid as evidenced by said Certificate No. 3793, in accordance with law. That said note is past due, having matured on, or about, May 31, 1929. That nothing has been paid on account of said note and pledge for $800.00 and that said full amount is due, past due, and owing by said defendant, W. R. Dodge, to this respondent. That said pledge is in full force and effect, and that this respondent has a lien and privilege, right and claim, by preference and priority over all persons whomsoever, and especially the plaintiff in the above entitled and numbered cause, for and against said ten shares of stock, for the faithful payment of said note and pledge, which pledge this respondent hereby claims and asserts in accordance with law."

Thereupon plaintiff, Dyer, obtained from the district judge an order requiring the homestead association to show cause why it should not be condemned to pay over to plaintiff the sum of $200, with legal interest from "July 9, 1929," and costs of the said rule.

July 10, 1929, was the day on which the garnishment proceedings were issued and were served on Reliance Homestead Association, and we assume that it is from that day that plaintiff intended to claim interest.

In answer to the said rule defendant in rule averred that it could not pay over to plaintiff the $200 claimed, without violating the provisions of section 7 of Act No. 120 of 1902, as amended by Act No. 280 of 1916, which is the act under which homestead associations are incorporated. Section 7 reads as follows:

"Be it further enacted, etc., That a member may withdraw his shares or credits thereon at any time by giving written notice of such intention and shall then be entitled to receive the amount paid in by him, and such proportion of the profits as the act of incorporation or by-laws may prescribe, less all fines, charges, expenses and losses accrued or contingent to the time of notice of withdrawal, as the board of directors may determine.

"Each association shall keep a register of notices of withdrawal in the order in which they are filed, giving dates of notices and amounts to be withdrawn, and shall pay the same in the order in which such notices of intention to withdraw were filed. Whenever the proportion of receipts ordinarily made applicable to the demands

of withdrawing members by resolution of the board of directors is not sufficient to pay all such demands within sixty days from date of notice, one-half of its receipts shall thereafter be applied to the liquidation of the claims of withdrawing members until all deferred claims are paid.

"Any association may permit a member to withdraw part of the accumulation to his credit without thereby reducing the number of shares held by him."

On February 10, 1930, judgment was rendered dismissing this rule, and plaintiff has appealed.

A brief resume of the facts may assist in arriving at a clear understanding of the controverted question.

On July 10, 1929, plaintiff, Dyer, seized in the hands of garnishee, Reliance Homestead Association, all property in its possession belonging to defendant, Dodge.

At that time Dodge was indebted to garnishee in the sum of $800 on a note, which had matured on May 31, 1929. This note was secured by pledge of ten shares of stock of Reliance Homestead Association, a homestead association being permitted, under the law of this state, to make a loan secured by pledge of its own stock.

Plaintiff contends that at the time of the seizure the homestead should have compensated its debt to Dodge, represented by the ten shares of stock standing in Dodge's name, with Dodge's debt to it, represented by the note, and that such a course on its part would have left a cash balance in Dodge's favor amounting to $200, which $200 should have been surrendered to the sheriff.

The homestead, on the other hand, contends that the debt represented by the stock owned by Dodge was not at that time due and demandable, since, under section 7 of Act No. 120 of 1902, as amended by Act No. 280 of 1916, withdrawals of homestead stock are not due when demanded, but only in the order in which such withdrawal notices are received and listed by the homestead association, and that, thus, the debt due to Dodge is not compensable against the already matured debt due by Dodge.

Article 2209 of our Civil Code supports the contention of garnishee. This article reads as follows:

"Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.

"The days of grace are no obstacle to the compensation."

We have no way of knowing from the record whether this homestead was behind in honoring its requests for withdrawals, but, whether it was or not, the seizure in its hands of any equity due to Dodge could have no other effect that to constitute a notice of withdrawal, and as of that day, to-wit, July 10, 1929, it should have entered on its register of notices of withdrawals what amounted in law to a request of Dodge for withdrawal of his stock.

At that time Dodge himself could have surrendered his stock and obtained payment therefor only when his turn was reached on the register of withdrawals. Surely neither the seizing creditor nor the homestead can be given greater rights than Dodge himself had. Other stockholders are interested; other withdrawals may be on the waiting list. To permit Dodge, be-

cause he owed the homestead money, to receive his payment ahead of others who may be on the waiting list, would be manifestly unfair to those others who owed the homestead nothing. In such a situation, if a homestead association be in such condition that its stock is not worth "par," to permit the unmatured obligation to be offset in full against the matured obligation would give to Dodge an unfair advantage over other stockholders.

It is said by plaintiff that deposits with homestead associations are and should be treated as cash, and that this has been so decided by this court and by the Supreme Court. Succession of D'Anna, 6 La. App. 142; Dimitry v. Shreveport Mutual Building Association, 167 La. 875, 120 So. 581. In Succession of D'Anna, the question under consideration was in no way similar to that now before us. There an administratrix demanded that a homestead association pay in cash for stock standing on its books in the name of decedent. The homestead contended that it could not be required to take up its own stock, but that it should be sold in the open market. We held that stock in a homestead is equivalent to a deposit in the sense that a holder of the stock may, at any time, apply for the withdrawal of the deposit by surrendering his stock, but we also held that he may receive his money only when his turn is reached on the withdrawal list. In Dimitry v. Shreveport Mutual Building Association, supra, the Supreme Court held that stock in a homestead is analogous to cash on deposit in the sense that the holder may surrender his stock and demand his deposit, but there, again, the court said, just as we did in Succession of D'Anna, that the stockholder may receive his money only when his turn is reached on the withdrawal register of the homestead association.

The two cases are, therefore, authority for the fact that a depositor in a homestead cannot demand the immediate repayment of his deposits, but must make application for withdrawal and then await his turn. Until his turn is reached, the debt due him ·is not demandable in the sense contemplated by article 2209 of the Civil Code.

Thus the amount due Dodge by the homestead was not equally demandable with that due by him to the homestead.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment condemning Reliance Homestead Association to enter on its withdrawal list as of July 10, 1929, notice of withdrawal of the ten shares of stock standing in the name of William R. Dodge, and to pay to the civil sheriff for account of the seizing creditor the balance which may be due to Dodge, when, in its regular order, the stock of Dodge is, or may have been, reached for retirement, after deducting from the proceeds of the said stock such amount as may at that time be or have been due it on Dodge's note in principal and interest. Costs of both courts to be paid by defendant in rule and appellee.

WESTERFIELD, J. (dissenting). I cannot agree with that portion of the decree which allows interest on the loan due the homestead after the day of the service of the notice of seizure. I therefore respectfully dissent.