HIGGINS, Justice.
 

 The residuary legatee, under the decedent’s last will and testament in nuncupative form by public act, dated March 9, 1938, filed suit against two particular legatees and the executrix of the estate, praying that the olographic codicils thereto, dated March 13, 1939, and May 27, 1939, be declared null and void and of no effect because they were not executed in the same form in which the will was made; and, in the alternative, that the double particular legacies to the same two legatees of twenty shares and thirty shares of homestead stock, respectively, be declared disjunctive bequests and not cumulative ones.
 

 The defendants filed exceptions of no right and of no cause of action, which were sustained by the district judge. The plaintiff has appealed.
 

 The admitted facts as appears from the petition and the record in the succession proceedings, which are made a part of the petition, are as follows: Lizzie Lee Ho-man died at her domicile in this City on October 27, 1941, without any forced heirs, leaving a last will and testament in nuncupative form by public act, dated March 9, 1938, wherein the plaintiff, Dudley K. Sadler, was named as residuary legatee and Edna K. Gaudet was appointed executrix with seizin and without bond; that on March 13, 1939, the decedent executed a codicil to the will in olographic form, in which she bequeathed to Marguerite Donovan the sum of $3,000; that on May 27, 1939, the deceased made another codicil to the will in olographic form, bequeathing to Dell Sadler, daughter of Dudley Sadler, thirty shares of homestead stock, and to Edna K. Gaudet, twenty shares of homestead stock; that on March 21, 1940, the deceased executed a third codicil to her will, in nuncupative form by public act, and among other bequests, made the following dispositions:
 
 “I
 
 give and bequeath unto Edna Konrad Gaudet twenty shares of Guaranty Homestead stock.” “I give to Dell Sadler thirty shares of Security Homestead stock.”; that at the time of the decedent’s death she owned forty shares of paid-up homestead stock in the Guaranty Homestead, each share having a par and appraised value of $100, or a total of $4,000, and sixty-three shares of paid-up homestead stock in the Security Homestead, each share having a par and appraised value of $100, or a total of $6,300; that deceased had on deposit with the various homesteads, including the two above mentioned, the sum of $12,467.21, representing paid-up homestead stock and cash deposited; and that hone of the codicils expressly revoked any of the previous
 
 *596
 
 bequests, but, on the contr'ary, in the last one a number of other bequests -were made.
 

 The argument that a codicil to a will must be executed in the same form as the will, or in other words, that the codicils in question should have been executed in nuncupative form by public act and not in olographic form, is without merit.
 

 Article 1590 of the Revised Civil Code, which is pertinent herein, provides: “It suffices, for the validity of a testament, that it be valid under any one of the forms prescribed by law, however defective it may be in the form under which the testator may have intended to make
 
 it.”
 
 See, also, Articles 1574 and 1692 of the Revised Civil Code.
 

 It is our opinion that the contention of plaintiffis counsel is untenable and they concede that they have been unable to find any authority to sustain it.
 

 With reference to the alternative issue, the plaintiff’s attorneys agree that the intention of the' testator should prevail. However, they say that where it can not be determined' whether a greater or lesser quantity has been bequeathed, the court must award the least.
 

 Articles 1712 and 1717 of the Revised Civil Code provide:
 

 “1712. In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.”
 

 “1717. If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least.”
 

 Defendants’ counsel argue that it is clear, under the facts and circumstances of this case, that the testatrix intended to give double legacies and not just one to each of the particular legatees, because she neither expressly or tacitly revoked the first bequests nor in any way limited the second ones.
 

 Articles 1691, 1692, 1693 and 1723 (1716) of the Revised Civil Code provide:
 

 “1691. The revocation of testaments by the act of the testator is express or tacit, general or particular.
 

 “It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition.
 

 “It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
 

 “It is general when all the dispositions of a testament are revoked.
 

 “It is particular when it falls on some of the dispositions only, without touching the rest.
 

 * * * *
 

 “1692. The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities.
 

 “1693. Posterior testaments, which do not, in an express manner, revoke the
 
 *598
 
 prior ones, annul in the latter only such of the dispositions there contained as are
 
 incompatible with the new ones, or contrary to them, or entirely different
 
 (Italics ours.)
 

 “1723 (1716). When a person has ordered two things, which are contradictory, that which is last written is presumed to he the will of the testator, in which he has persevered, and a derogation to what has before been written to the contrary.”
 

 In the instant case, there is neither an express nor a tacit revocation of the previous dispositions in question. The first bequests are in no way “incompatible with the new ones, or contrary to them, or entirely different” from the second ones. The same objects of the bequests were not given twice, nor were they given to different parties. The twenty and thirty shares of homestead stock bequeathed, respectively, in the second and third codicils can not be said to be the same shares of stock when there are more shares of homestead stock owned by the testatrix than are necessary to carry out both bequests and no reference to the particular certificates of stock are mentioned whatsoever. This is especially true since the testatrix did not limit the last bequests in any way except as to certain homestead stock. She died leaving two valid bequests of the same amounts of homestead stock to each of the particular legatees, because she neither expressly or tacitly revoked the first ones nor directly or indirectly limited the bequests to the latter ones only.
 

 In Section 1383, Page on Wills, 2nd Edition, it is stated:
 

 “If the legacies are, given by different instruments, as by a will and a codicil, or by two or more different codicils, and there js nothing in the rest of the will to indicate that one gift is a repetition of the other, it will be presumed that such gifts are cumulative. This presumption exists even where the legacies are of the same amount.”
 

 See, also, Louisiana. Legal Archives, Vol. 3 Part 1, Compiled Edition of the Civil Codes of Louisiana, R.C.C. 1723; C.C.1825, Art. 1716. Oeuvres de Pothier, Vol. 13, Paris 1825 (Dabo Jeune, Libraire), Traite des Donations Testamentaires, Chap. VII, pp. 199-224.
 

 In the Succession of Stallings, 197 La. 449, 1 So.2d 690, 692, under her will and codicils thereto, the testatrix gave to two particular legatees two legacies of $5,000 each and to a third particular legatee, two $10,000 legacies. The universal legatee claimed that the dispositions were repetitious or disjunctive and the particular legatees said that they were cumulative. We pointed out that the testatrix, in the last codicil, after having added the name of another residuary legatee, declared “My will otherwise is to remain unchanged”, and that she had not expressly revoked the previous dispositions nor limited them to the latter ones only. We stated that there' was no conflict between the first and second dispositions, respectively, and that the testatrix in the last codicil having added additional bequests thus showed an intention on her
 
 *600
 
 part to give more rather than less. We found that there was no tacit revocation and held that both bequests to each of the three legatees were valid and should be carried out. See, also, Louisiana Law Review, Volume 4, page 184 (1942), and Succession of Berdon, this day decided, 202 La. 607, 12 So.2d 654.
 

 Counsel for the plaintiff have referred us to two cases (in support of claimant’1» position. Robouam’s Heirs v. Robouam’s Executor, 1838, 12 La. 73, and Succession of Mercer, 1876, 28 La.Ann. 564. In the former case, the whole opinion of the Court on this point is as follows:
 

 “The testator left two wills; in the first he bequeathed to A. and S. Lefebvre a sum of five hundred dollars each, with a proviso, that if only one of those legatees survived him, he should have both legacies, i. e., one thousand dollars. In the second will, the same legacies are made to these individuals, but the jus accrescendi is omitted. We are of opinion, that the Court of Probates erred in sustaining the legacies claimed to both bequests; for we consider that in the second will, as a repetition of the one in the former, modified only by the omission of the jus accrescendi in the latter, which leaves it at least doubtful whether the testator intended a double legacy to each legatee. The Civil Code, 1710 [R.C.C.1717], provides, that ‘if it cannot be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least.’ ” (Italics ours.)
 

 Obviously there Was no express revocation in that case. It will be noted that the Court did not cite the articles of the Civil Code with reference to tacit revocation and did not give any analysis of the facts, which are meagerly stated, to show how it .arrived at the conclusion that the bequest in the second will was merely repetitious of the bequest in the first will. Furthermore, no reasons were assigned or facts recited by the Court to support its opinion that it was “at least doubtful whether the testator intended a double legacy to each legatee.” Clearly, the second legacy was in no way'incompatible with, entirely different from, or contrary to the first one, because the testator placed nothing in the second will to indicate in the slightest that he was limiting the dispositions to one bequest for each legatee. In short, he made two valid double bequests and the only reason why the Court declared the second bequests repetitious of the first ones and the intention of the testator as to whether he intended single or double legacies was doubtful, was because the legacies were bequeathed to the same parties for the same amounts respectively. So, the Court, without anything in the second will to show a tacit revocation of the first bequests, for all practical purposes declared the first bequests tacitly revoked, without even mentioning the subject of tacit revocation.
 

 In the latter case, the main part of the Court’s opinion on this question is as follows :
 

 “The testator left a large estate, and having no forced heirs, disposed of the whole of it by testamentary dispositions,
 
 *602
 
 made at different times, in the forms of wills and codicils. He appointed executors. The controversy in this case has arisen from a disagreement between the executors in regard to the interpretation of the provisions of the wills and codicils.
 

 “Celestine Eustis opposes the tableau of distribution presented by Butler [co-executor] on the ground that she is set down on his tableau as a legatee for twenty-five hundred dollars, whereas by the various testamentary dispositions of the testator she is entitled to fifteen hundred pounds sterling or the equivalent in gold, equal to seventy-five hundred dollars.
 

 “Ellen Cammack, wife of Antonio de Ximino, and the latter as guardian of his minor child, Anna Ellen de Ximino, opposes the tableau of Butler on the ground that the wife and the minor are each placed on it as legatee for twenty-five hundred dollars, whereas by the various wills and codicils of the testator they are entitled to five thousand dollars each, or one thousand pounds sterling.
 

 “Shields’ [co-executor] account and tableau is opposed by the other executor [Butler] on several grounds, the chief ground, however, being that by an erroneous interpretation he has regarded legacies as expressed in subsequent testamentary dispositions just as they were in former dispositions as cumulative, and entitling the legatees to larger amounts than was intended by the testator; the executor, Butler, contending that the testator’s bequests by subsequent acts of last will are mere repetitions of his purpose where the former dispositions do not conflict with the latter.
 

 “Judgment was rendered in the court below in favor of the account filed by the executor Butler. [Brackets ours.]
 

 %
 
 ij< 5¡«
 
 %
 

 “Tacit revocation results from some other disposition of the testator, or from some act which supposes a change of will. When, therefore, by the first will, in the case before us, the testator constituted Celestine Eustis legatee for one' thousand pounds, and by the second a legatee for five hundred pounds, there was a tacit revocation — there was a confliction between the provisions of the two wills in regard to the amount of the legacy; the provision by the last will showing the intention to bestow upon the legatee five hundred pounds and not one thousand pounds. In the case of Mrs. Ximino and the minor Anna Ximino and the two asylums, no change was made in the legacies by the last will. This shows only the will of the testator repeated in the second will that these legatees should recover the legacies granted by the first will. Upon no sound principle of reasoning do we see, can it be maintained that where anterior or preceding testaments are not expressly and entirely revoked by subsequent ones all the provisions of all the testaments -have effect, and that in such cases there is a cumulation of the legacies, as contended for by the opponents in this, case. We think the case clearly with the executor Butler, and approve .the able judgment of the court a qua.”.
 

 
 *604
 
 The facts show that the first will was made on April 11, 1866, and'the second will was made on April 27, 1869, and contained the following provision:
 

 “I, W. Newton Mercer, formerly of Laurel Hill, Mississippi, but now of New Orleans, in Louisiana, do make and declare this to be my last will and testament,
 
 revoking and annulling all other wills and codicils of previous dates in conflict or at variance with it.”
 
 (Italics ours.)
 

 While the Court cited Articles 1691 and 1693 of the Civil Code on the subject of tacit revocation, it stated that, because the second legacy to Celestine Eustis was for five hundred pounds, it conflicted with the provision in the former will granting her one thousand pounds, thus showing the testator’s intention to bestow only five hundred pounds upon the legatee. Where the legatees were granted each the same amounts, respectively, in the first and second wills, these bequests were held merely to have been repeated. Again we observe with reference to the double legacies of equal amounts to the same parties that the Court attempted no analysis of the facts to show how it arrived at its conclusion that the bequests were repetitious and did not cite any authority to sustain that view.
 

 In the cases where the first and second bequests in different instruments are made to the same party for the same amount, to say that the latter is repetitious of the former because of those facts alone, without any other circumstance to show that is the intention of the testator, certainly makes him do a vain and useless thing, because he has already made provision in the former will or codicil for the single amount. Therefore, it is only by giving effect to both bequests that the intention of the testator is carried out, because he has certainly made two valid dispositions, in the absence of an express or a tacit revocation of the first one and failure to limit the' bequest to the second one only.
 

 In the Succession of Stallings, supra, we rejected the suggestion that the testatrix might have forgotten about the previous bequests and stated that the presumption was that she knew what dispositions she had made in her testament. We took cognizance of the two above cited authorities and distinguished them, because the testatrix, in her codicil, had stated “My will otherwise is to remain unchanged.” In the instant case, the testatrix did not insert such a provision in the codicils in question. The difference between the two cases, therefore, is that in the former one the testatrix expressly made clear her intention that her will otherwise. was to remain unchanged, whereas, in the latter, or this case, while the testatrix did not expressly state that her will was to remain unchanged, she placed nothing in the codicils which would indicate the intention on her part to make any changes insofar as these bequests were concerned.
 

 It is our opinion that the cases of Rabouam’s Heirs v. Rabouam’s Executor and Succession of Mercer, supra, on the question of single or double legacies of' the same amounts to the same legatees, are not sound and, in that respect, are overruled.
 

 
 *606
 
 Counsel for plaintiff argue that the testatrix, realizing that she had failed to state in the olographic codicil the name of the particular homestead from which the paid-up shares of stock were to be taken in delivering the legacies, merely attempted to correct this error by inserting in the nuncupative codicil by public act the names of the homesteads and therefore there is grave doubt as to her intention to give a double portion to these legatees. But there is nothing to indicate that she thought she had made errors in the first bequests.
 

 In the case of Dimitry et al. v. Shreveport Mut. Bldg. Ass’n, 167 La. 875, 120 So. 581, the Court held that paid-up shares of stock in a building or homestead association are merely deposits of sums of money at a fixed rate of interest subject to withdrawal at any time. See, also, Act No. 140 of 1932; Dyer v. Dodge, 15 La.App. 677, 680, 131 So. 740; Succession of D’Anna, 1927, 6 La.App. 142; and Corpus Juris, Vol. 9, p. 943, 12 C.J.S., Building and Loan Associations, § 28.
 

 The only difference between the first and second bequests is that the latter name the homesteads from which those particular shares of stock are to be delivered in carrying out the legacies. In short, the language of the second bequests is more restricted and specific than that used in the first where the homestead stock is given without any designation of the homestead. In none of the bequests were the shares of stock limited to a particular numbered certificate. Consequently, it cannot be said that the bequests in the final codicil are incompatible with, contrary to, or entirely different from the previous ones. Therefore, there was no tacit revocation. We have already demonstrated that all of these bequests were valid and should be carried out because at the time of the deceased’s death, she owned sufficient homestead stock to fulfill the double legacies.
 

 The testatrix, in executing the nuncupative codicil by public act on March 21, 1940, had the benefit of the same counsel, who had written her will as a notary public, and did not, in the slightest, indicate that she was expressly or tacitly revoking the previous bequests, or that she was limiting the bequests to the latter one's only. On the contrary, she showed an intention to be generous as far as the particular legatees were concerned, and to reduce the amount which would eventually go to the residuary legatee, Dudley Sadler. For instance, she gave her brother, Arthur Homan, $2,000 cash, Ida Patterson, $300 cash, Mrs. Sara Dell Sadler, wife of Dudley Sadler, $2,000 cash, and then followed with the two bequests of Guaranty Homestead and Security Homestead stock to the defendants herein.
 

 It is our conclusion that the legacies are cumulative and not disjunctive, and that the trial judge correctly sustained the exceptions of no right and of no cause of action and dismissed the plaintiff’s petition.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the lower court is affirmed at the appellant’s costs.
 

 
 *608
 
 O’NIELL, C. J., dissents from the ruling that Edna Konrad Gaudet is entitled to an additional 20 shares of homestead stock, besides the 20 shares of Guaranty-Homestead stock, and dissents from the ruling that Dell Sadler is entitled to an additional 30 shares of homestead stock, besides the 30 shares of Security Homestead stock; and the chief justice dissents particularly from the overruling of the decision in Robouam’s Heirs v. Robouam’s Executor, 12 La. 73, rendered in 1838, and from the overruling of the decision in the Succession of Mercer, 28 La. Ann. 564, rendered in 1876; which decisions are supported by article 1717 of the Civil Code, and have served as guides for several generations of testators, notaries public, and attorneys and counsellors at law.