196 So.2d 536 (1967)
Charles J. MENARD, Administrator of the Succession of Mrs. Anna M. Buck, Widow of Charles J. Menard
v.
Mrs. Marie L. MUHS, Charles Muhs, as Natural Tutor of the Minors, Michael Muhs, Eric Muhs, and Security Homestead Association.
No. 2530.
Court of Appeal of Louisiana, Fourth Circuit.
March 6, 1967.
Rehearing Denied April 3, 1967.
Writ Refused May 19, 1967.
Robert J. Zibilich and C. Cyril Broussard, New Orleans, for plaintiff-appellant.
Jesse S. Guillot, New Orleans, for defendants-appellees.
Edmund G. Miranne and Lee C. Grevemberg, New Orleans, for defendant-appellee.
Before REGAN, SAMUEL and HALL, JJ.
SAMUEL, Judge.
In his capacity as administrator of the succession of his mother, Mrs. Anna M. Menard, plaintiff filed this suit against Mrs. Marie L. Muhs, Charles Muhs, as natural tutor of the minors Michael and Eric Muhs (children of Marie and Charles Muhs), and the Security Homestead Association seeking: (1) to have returned to the succession the decedent's optional share account book No. 17332 in that association; or, alternatively, (2) judgment against the defendants in the amount of $11,630.48, the balance in the account. There was judgment in the trial court dismissing plaintiff's suit and he has appealed therefrom.
The facts are not in dispute. All of the evidence, without contradiction, establishes the following: For many years during her lifetime the decedent, who was the aunt and Godmother of the defendant Mrs. Marie L. Muhs, had owned optional payment shares of the Security Building & Loan Association (whose name has been changed to Security Homestead Association) represented by certificate or optional *537 share account No. 17332. On Saturday, June 2, 1962 she filled in and signed the transfer form contained in the back of her optional share account book, transferring and assigning "unto Marie L. Muhs or Michael or Eric Muhs all my right title and interest in all optional payment shares of the Security Building & Loan Association, represented by certificate No. 17332 * * *" and gave the account book to Mrs. Muhs. She intended to give the $11,630.48 balance in the account to Mrs. Muhs and her two named children for the education of those children. On Monday, June 4, 1962 Mrs. Muhs presented and surrendered the book and the executed transfer form contained therein to the Security Homestead Association which transferred the $11,630.48 balance to "Mrs. Marie L. Muhs or Michael Muhs or Eric Muhs", as designated by the decedent. The transfer was completed on June 4, 1962; optional share account book No. 17332 and its ledger card issued to "Menard, Mrs. Anna M." were cancelled and a new optional share account book No. 26450 and accompanying ledger card were issued in the names of the three Muhs as aforesaid. Mrs. Menard died on June 5, 1962, the day after the transfer was effected.
The sole question presented by this appeal is whether the decedent made a valid donation inter vivos of her account book or certificate, and of the balance therein, despite the fact that the donation was not accomplished by a notarial act. Pertinent are LSA-C.C. Arts. 1536 and 1539, which read as follows:
"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things such as rents, credits, rights or actions, under the penalty of nullity." LSA-C.C. Art. 1536.
"The manual gift, that is, the giving of corporeal movable effects accompanied by a real delivery, is not subject to any formality." LSA-C.C. Art. 1539.
As succinctly set out in the trial court's reasons for judgment under the Lousiana Homestead and Building and Loan Law, LSA-R.S. 6:721 et seq., homestead associations are mutual companies whose depositors-members are shareholders therein. The association's capital is divided into shares and those shares may be issued in several classifications including "optional payment shares" popularly called "homestead accounts" or "running shares". The amount deposited in the account represents shares which may be redeemed for fully paid shares and that amount, or any part thereof, may be withdrawn in cash at any time. However, unlike fully paid shares, the depositor receives only an optional share account book in which withdrawals and deposits are entered and a running total maintained; the depositor's agreement with the homestead and a certificate for the number of shares for which he subscribes, and makes initial payment with his first deposit, are contained within the covers of that book. Homestead association members, the ones who fund it (including depositors in homestead accounts), are shareholders and they acquire shares which need not be issued in certificate form except on request. The balance in his account determines the number of shares actually owned by such a depositor-member at any given time.
Title to fully paid shares in a Louisiana homestead association represented by a certificate can be validly donated inter vivos, without the necessity of a notarial act, by the donor-owner executing an irrevocable power of attorney to sell, assign or transfer the same and delivering that power of attorney and the certificate to the donee; such a transfer is regulated by the Uniform Stock Transfer Act, LSA-R.S. 12:501 et seq., and is not subject to LSA-C.C. Art. 1536. Succession of McGuire, 151 La. 514, 92 So. 40; LeBlanc v. Volker, 198 So. 398.
Appellant argues the Uniform Stock Transfer Act cannot be controlling here because, as is customary in the case of *538 optional payment shares, no stock certificates were issued to the decedent who was the owner of the account; that the account book reflects money deposited much in the same manner as a bank savings book and is therefore a credit requiring a notarial act in connection with a donation inter vivos as specifically provided by LSA-C.C. Art. 1536. We note there is a certificate contained in the decedent's account book for 15 optional payment $100 par value shares reflecting her subscription at the time the account was opened, but no certificates were issued for additional shares covered by the balance on deposit, all as also is customary.
The trial court concluded a valid donation took place in the instant case under either concept, i. e., whether the optional share account book represented stock or cash. We agree there should be judgment in favor of the defendants but prefer to base our opinion on the cash concept. The Supreme Court of Louisiana has characterized optional payment shares in a homestead essentially as funds deposited at a fixed rate of interest, both principal and interest being subject to withdrawal at any time. Succession of Mulqueeny, 248 La. 659, 667, 181 So.2d 384, 387; Succession of Homan, 202 La. 591, 605, 12 So.2d 649, 653; Dimitry v. Shreveport Mut. Bldg. Ass'n., 167 La. 875, 877, 120 So. 581, 582.
Our settled jurisprudence for almost a century is that a check may be the subject matter of a manual gift under LSA-C.C. Art. 1539; the execution and delivery to the payee by the maker of a check which is collected constitutes a valid donation inter vivos of the funds represented by such check when the maker intended to donate the same. Succession of DePouilly, 22 La. Ann. 97; Stauffer v. Morgan, 39 La.Ann. 632, 2 So. 98; Succession of Browne, 176 So.2d 217; see Burke v. Bishop, 27 La.Ann. 465; Succession of Turgeau, 130 La. 650, 58 So. 497; Succession of Leroy, 157 La. 1077, 103 So. 328, 40 A.L.R. 503; Succession of Desina, 123 La. 648, 49 So. 23.
The rationale of these decisions is this: A check is not an obligation; it is an unconditional order to pay. It represents money and to all practical intents is money. When a check is given as a donation it is the money which is given and reduced to the donee's possession when the check is cashed. The giving of a check which is collected is a gift of the money represented thereby, the check being the means or vehicle of delivery. Therefore, as money is a corporeal thing, the giving of a check is a manual gift of corporeal movable effects within the meaning of LSA-C.C. Art. 1539 and subject, under that article, to no formality other than that of delivery.
This reasoning appears to us to be labored and strained. We much prefer what was said by Justice St. Paul in his concurrence in Succession of Leroy, supra: "I think article 1536, R.C.C., applies only to such credits as are not transferable by mere delivery of title." However, the Supreme Court itself consistently has based its holdings on the rationale above set forth and we must follow the same.
Insofar as the validity of a donation inter vivos is concerned, we see no material difference between money on deposit in a homestead association as represented by decedent's optional share account book in the instant case and money on deposit in a bank checking account. The fact that interest may be paid on the former and not on the latter, of course, is immaterial here. And the executed transfer form contained in the back of the account book is, in all respects material to the issue before us, similar to an executed check in the full amount on deposit in a checking account. The executed transfer form here was an unconditional order, requiring no additional act by the decedent other than delivery of the account book in which that order was contained, under which the homestead association was required to pay all of the money in the account to the Muhs and that money was reduced to the possession of the latter when the association transferred the *539 entire balance to them. Decedent's delivery of the executed transfer form and the optional share account book to Mrs. Muhs was a manual gift of the money represented thereby, all of the balance in the account, the transfer form and book simply being the means or vehicle of delivering a corporeal movable effect, money.
We are of the opinion that the decedent made a donation inter vivos which was valid as a manual gift under LSA-C.C. Art. 1539.
The judgment appealed from is affirmed.
Affirmed.