364 So.2d 1059 (1978)
Dave Willis BURKES and Renda C. Burkes, Plaintiffs-Appellees,
v.
Minerva BARBOUR, Defendant-Appellant.
No. 13677.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1978.
*1060 Paul Henry Kidd, Monroe, for defendant-appellant.
Patrick H. Wright, Jr., Monroe, for plaintiffs-appellees.
Before HALL, MARVIN and JONES, JJ.
JONES, Judge.
Defendant, Minerva Barbour, appeals a judgment denying her ownership of an account in the name of Dewitt Burkes (now deceased) or Minerva Barbour in Peoples Homestead & Savings Association. In the judgment appealed from plaintiffs were awarded attorney fees against the defendant because of her refusal to surrender to them the savings account book following their demand for it after having been recognized as owners of the account in the judgment of possession in the Succession of Dewitt Burkes.
We reject the plaintiffs' claim for attorney fees and as modified, affirm the judgment.
The decedent established the optional share account in the Peoples Homestead Savings Association December 27, 1963 and was issued Stock Certificate No. 10814[1] in his name alone for 100 optional payment shares. This stock certificate was retained in the possession of Peoples Homestead Savings Association. Peoples Homestead delivered to decedent a savings book reflecting his ownership of the account.
On December 14, 1976, at a time when decedent had approximately $2400 on deposit in his account, he went to the Peoples Homestead office accompanied by defendant and added her name to the account. This was accomplished by his execution of an ASSIGNMENT SEPARATE FROM THE CERTIFICATE reading as follows:
"FOR VALUE RECEIVED, I Dewitt Burkes, hereby sell, assign and transfer unto Dewitt Burkes or Minerva Barbour all of my shares of the Capital Stock of the Peoples Homestead & Savings Association Standing in Dewitt Burkes name on the books of said association, represented by Certificate No. 10-10814 herewith and do irrevocably constitute and appoint the President attorney to transfer the said stock on the Books of the within named Company with full power of substitution in the premises.
Dated 12/14/76
IN PRESENCE OF Dewitt Burkes/s
Marilyn Davidson/s Dewitt Burkes
*1061 At the time of this transaction, defendant's name was added to the savings account book and the records of the association were changed to reflect the defendant's name on the account, and as such, entitled to make deposits and withdrawals. A signature card was prepared and the signature of defendant was obtained and this card was added to the records of the account. Though it was the customary practice of the Peoples Homestead to add the name of an "added or account holder" to the optional share certificate at the time the account owner made the assignment, this was not done in this instance. The defendant's name was added to the certificate several months after the death of Dewitt Burkes. On December 14, 1976, decedent delivered to defendant the account book. Defendant never made any deposits or withdrawals from the account.
The decedent, an elderly man who was in poor health, had moved into the home of defendant following his discharge from the hospital on September 13, 1976. Decedent and defendant, prior to this time, had been good friends. Decedent lived in the home of defendant until his death on December 30, 1976.
During decedent's stay in defendant's home, she cleaned his clothes, prepared his food, carried him to the doctor, gave him his medicine and otherwise, generally provided for his needs. During this period of some 10 weeks, defendant received from the deceased approximately $4300 in cash.
Plaintiffs in this suit, children of the decedent, following the death of their father, were recognized as his sole heirs by an ex parte judgment of possession. Included among their father's property in which they were sent into possession, was the Peoples Homestead & Savings Association account on which defendant's name had been placed and which savings book representing this account was in possession of the defendant at the time of plaintiffs' father's death.
Following the possession judgment, plaintiffs made demand upon defendant for the savings account book but she declined to surrender it to them. Plaintiffs instituted this suit against defendant styled "Petition for Declaratory Judgment and Damages", wherein they sought to be recognized as owners of the Peoples Homestead & Savings Association account which was in the name of their father and Minerva Barbour at the time of his death and sought possession of the account book, damages, and attorney fees from the defendant because of her refusal to voluntarily release the account book to them. The defendant answered the suit contending that she had received the account from decedent by a gratuitous inter vivos donation or in the alternative, that she was the owner of the account by virtue of a remunerative donation.
The trial court denied defendant's claim to ownership finding it to be neither a gratuitous donation nor a remunerative donation and recognized the plaintiffs as owners of the account. Plaintiffs were awarded a judgment of $750 attorney fees because defendant failed to deliver to them the book representing the account after the rendition of the judgment of possession.
The issues are: (1) did defendant acquire ownership of the account either by a gratuitous or remunerative donation? and (2) if defendant was not the owner of the account, is she liable for attorney fees because of her refusal to surrender the account book?
The resolution of these issues require consideration of the following articles of the Civil Code:
C.C. Art. 1468  "A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it."
C.C. Art. 1523  "There are three kinds of donations inter vivos: The donation purely gratuitous, or that which is made without condition and merely from liberality;

*1062 The onerous donation, or that which is burdened with charges imposed on the donee;
The remunerative donation, or that the object of which is to recompense for services rendered."
C.C. Art. 1525  "The remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift."
C.C. Art. 1526  "In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services."
C.C. Art. 1536  "An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
C.C. Art. 1538  "A donation inter vivos, even of (corporeal) movable effects, will not be valid, unless an act be passed of the same, as is before prescribed. Such an act ought to contain a detailed estimate of the effects given."
C.C. Art. 1539  "The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
The addition of defendant's name to the account did not divest the decedent of control of the account nor constitute real delivery of the funds to the defendant and did not transfer ownership of the funds. Succession of Dykes, 258 So.2d 606 (La.App. 1st Cir. 1972); Dawson v. Capital Bank & Trust Co. of Baton Rouge, 261 So.2d 727 (La.App. 1st Cir. 1972).
This type of building and loan stocks or shares has been characterized by the supreme court as "`merely a deposit of a sum of money at a fixed rate of interest, the principal and interest being all subject to withdrawal at any time.'" Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (La. 1965). An account on deposit is an incorporeal right, C.C. Articles 460, 474, which may only be donated by a notarial act in compliance with Article 1536. Broussard v. Broussard, 340 So.2d 1309 (La.1976). While it can be said that the savings account book was a corporeal thing and therefore delivery of the book constituted a manual donation in accordance with Article 1539, the mere possession of the book by defendant did not transfer the obligation which it represented. The obligation constituted an incorporeal thing which could only be validly transferred in accordance with the provisions of Article 1536. Bordelon v. Brown, 84 So.2d 867 (La.App. 2d Cir. 1956).
The defendant contends that La.R.S. 6:744 [2] enacted by Act 234 of 1970 entitles her to the ownership of the account. She contends that it eliminates the requirement that the donation of an incorporeal movable be made in compliance with C.C. Art. 1536. There is no provision in the cited section which reflects a legislative intent to change the law requiring inter vivos donations of *1063 incorporeal movables to be made by authentic act.
Defendant argues that the decision of Menard v. Muhs, 196 So.2d 536 (La.App. 4th Cir. 1967), is authority for holding the transaction here in question to be a valid gratuitous donation inter vivos even though it was not in the form required by C.C. Art. 1536.
In the Menard case, the owner of the optional savings account endorsed the optional share certificate which was attached to the savings account book. The endorsed certificate assigned "unto Marie L. Muhs or Michael or Eric Muhs, all my right, title and interest in all optional payment shares of the Security Building and Loan represented by Certificate No. 17332". The account owner delivered to Marie L. Muhs the assignment and the account book. Mrs. Muhs presented the assignment and the account book to the savings and loan association which cancelled the old account and issued a new optional share account book in the names of the assignees. The day following the completion of the transaction, the initial owner of the account died. The court concluded there had been a valid manual gift within the contemplation of C.C. Art. 1539. The court found the transaction analogous to a situation where a check had been delivered by the maker to a payee who thereafter cashed it, which completed transaction has been construed to be a manual gift. Succession of Browne, 176 So.2d 217 (La. App. 2d Cir. 1965).
The Menard case differs from the one here in that Dewitt Burkes did not assign all of his interest in the account, but on the contrary retained his name on the stock certificate and the account book, which is not in accord with the definition of an inter vivos donation contained in C.C. Article 1468. Neither did the defendant act upon the assignment and have the account changed totally into her name as was done in Menard. Under these circumstances, Menard does not justify the finding of an inter vivos manual gift in the instant case.
In the decision of Broussard v. Broussard, supra, the court considered circumstances where a husband with his separate funds purchased savings account certificates of deposit in a savings and loan association in his name and the name of his wife "Dudley L. Broussard and Aljane D. Broussard". The wife sought to be declared the owner of one-half of the certificates of deposit on the theory that the husband had donated her the interest therein by virtue of the deposit in their joint names.
The court stated:
"There was no actual delivery of the cash to Mrs. Broussard. The purchases of certificates in the name of both spouses, without an actual withdrawal and delivery of funds to Mrs. Broussard, did not effect a manual gift or donation to her. Rather, the purchases were analogous to a deposit in a joint savings account, which in and of itself, will not transfer ownership of the funds." (page 1313)
The addition by its owner of an "or account holder" to a homestead savings account which is analogous to the purchase of a certificate of deposit jointly in the name of a person who does not own the fund will not constitute a valid donation of the account, nor can such a transaction be construed to be a manual gift.
The Broussard court made the following observations with regard to the applicability of the Uniform Stock Transfer Act, LSA-R.S. 12:621-43, to endorsements of savings and loan association stock:
"Although past decisions have held that the Uniform Stock Transfer Act is applicable to savings and loan association stock, Succession of McGuire, 151 La. 514, 92 So. 40 (1922); Menard v. Muhs, 196 So.2d 536 (La.App. 4th Cir. 1967); Le-Blanc v. Volker, 198 So. 398 (La.Orl.App. 1940); this conclusion now appears doubtful because of the specific provisions governing transfers of shares or savings accounts enacted by Act No. 234 of 1970. See, LSA-R.S. 6:744 (our footnote # 2) * * * Thus, even in a case where compliance with the stock transfer legislation may substitute for the codal formalities of a donation, the substantive requirements of a divestment and donative intent *1064 must be fulfilled in order to effect a valid donation. * * * The certificates were purchased in the names of both spouses and Mr. Broussard did not divest himself of the right to withdraw the funds. Under these circumstances, we cannot infer an intent to donate from a transaction which did not comply with the codal requirements for a donation." (Pp. 1313-1314)
None of the cases where the Uniform Stock Transfer Act has been applied to recognize donations of savings and loan association stock which occurred without compliance with C.C. Article 1536, involved situations where the transferor had retained his name on the stock certificate. Broussard questions that compliance with stock transfer legislation can accomplish a donation of stock in a savings and loan association and unequivocably holds that no such transaction can take place where the transferor retains his name on the stock. The decedent made no gratuitous donation of his Peoples Homestead stock to the defendant.

WAS THERE A REMUNERATIVE DONATION?
The value of the services rendered by the defendant to decedent for the period from September 13, 1976 to December 30, 1976, or for approximately 10 weeks, could not have been worth more than the sum of approximately $4300 which she received from decedent in cash during that period. Under these circumstances, it could not be said that there could have been unremunerative services performed by defendant for the decedent which could have exceeded by one-half the $2400 deposit in decedent's account in the Peoples Homestead. For this reason, the placing of defendant's name on this account cannot be construed as a remunerative donation within the contemplation of C.C. Articles 1523 or 1525, and therefore excluded from the rules peculiar to donations inter vivos under the provisions of C.C. Article 1526. Bordelon v. Brown, supra.
Decedent made no remunerative donation of his Peoples Homestead account to the defendant.

DOES DEFENDANT OWE ATTORNEY FEES?
The general rule is that attorney fees cannot be awarded unless agreed to by contract or provided for by statute. See Lee v. Lewis, 339 So.2d 513 (La.App. 2d Cir. 1976), where attorney fees were denied the owner of a truck which was wrongfully seized without a judicial proceeding because they were neither authorized by contract nor statute. There is no authority for the attorney fee award against the defendant for her refusal to deliver the account book to the plaintiffs when they demanded it.
For reasons assigned the award of attorney fees in the amount of $750 against the defendant is REVERSED and the demand for them rejected and the judgment as modified is AFFIRMED at appellant's cost.
NOTES
[1] The stock certificate provided as follows: "THIS CERTIFIES that Dewitt Burkes (or Minerva Barbour) has subscribed for and made the initial payment upon one hundred optional payment shares, and is a member of the undersigned. This certificate is issued and by the acceptance hereof, is held subject to all provisions of the Laws of the State of Louisiana, the articles of incorporation and by-laws of the undersigned, and is transferable on the books of the undersigned by the holder hereof, in person, or by duly authorized attorney, upon surrender of this certificate properly endorsed. The undersigned may treat the holder of record hereof as the owner for all purposes without being affected by any notice to the contrary until this certificate is transferred unless and until the transferee has made proper application for membership in and has been accepted as a member of the undersigned. WITNESS the seal of the undersigned and the signatures of its duly authorized officers, this 27th day of December, 1963."
[2] La.R.S. 6:744(A)  "OWNERSHIP. Shares or savings accounts may be opened and held solely and absolutely in his own right by, or in trust or other fiduciary capacity for, any person, including an adult or minor individual, male or female, single or married, partnership, association, fiduciary, corporation, or political subdivision or public or governmental unit or any person or entity authorized to own shares. Unless otherwise specified by contract, savings accounts shall be represented only by the account of each savings account holder on the books of the association, and such accounts or any interest therein shall be transferable only on the books of the association and upon proper written application by the transferee as a member upon terms approved by the board of directors; and the association may treat the holder of the record of a savings account as the owner thereof for all purposes without being affected by notice to the contrary unless the association has acknowledged in writing notice of a pledge of such savings account. (B) EVIDENCE OF OWNERSHIP. An account book may be issued to each savings account holder of record as shown by the books of the association, and such account book shall, if issued, indicate the withdrawal value of the savings account. A separate certificate for a savings account may be issued in lieu of an account book, entitled `Certificate of Savings Account'. A share, certificate, or passbook may be issued to each member owning a share or shares in the association."