JOHN M. RUCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruch v. Commissioner
Docket No. 16670-80.
United States Tax Court
T.C. Memo 1982-493; 1982 Tax Ct. Memo LEXIS 256; 44 T.C.M. (CCH) 964; T.C.M. (RIA) 82493; August 25, 1982; Reversed October 31, 1983 *256 Held: Because petitioner's mother had income in excess of $750 during each of the years in issue petitioner is neither entitled to a dependency exemption deduction for her nor entitled to head of household filing status. Held further: Under Louisiana law there was no valid inter vivos donation of funds to petitioner. Therefore, petitioner is not entitled to a deduction under section 213 for his mother's medical expenses paid for with those funds. Charles B. Johnson, for the petitioner. Elizabeth M. Fasciana, for the respondent. IRWIN
MEMORANDUM OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Year
Deficiency
1975
$165.00
1976
890.00
1977
3,038.00
The issues for our decision are: (1) whether petitioner is entitled to a dependency exemption deduction for his mother pursuant to section 151(e)(1)(A); [1] *257 (2) whether petitioner is entitled to head of household filing status under section 2(b)(1)(B); and (3) whether petitioner is entitled to a deduction for payment of his mother's medical expenses under section 213(a)(1). This case was presented to the Court as fully stipulated and those stipulated facts are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner was a resident of New Orleans, Louisiana, at the time of the filing of the petition in this case. He timely filed his Federal income tax returns for the calendar years 1975, 1976 and 1977 with the Internal Revenue Service Center in Austin, Texas. The filing status claimed on his returns for all 3 years was unmarried head of household. On April 17, 1978, Mr. Ruch filed amended tax returns for the taxable years 1975 and 1976 seeking refunds of $1,104 and $2,179, respectively. Respondent disallowed petitioner's claim for refund and, in addition, determined deficiencies in petitioner's Federal income tax for 1975, 1976 and 1977. [2] Mr. Ruch's mother, May Young, lived with him in a house *258 he rented in New Orleans during all of 1975, 1976 and 1977. Mrs. Young's income during those 3 years was $8,669.46, $6,696.47 and $7,072.26, respectively. Her entire income was used for her support during those years. Mrs. Young did not file income tax returns for the years at issue. Petitioner's expenditures on behalf of his mother were $9,087.48 in 1975, $18,900.31 in 1976, and $22,834.22 in 1977. Mr. Ruch did not have sufficient funds of his own [3] to meet these expenses. Rather, the funds expended for the care of his mother had been transferred to petitioner by his mother in 1975. On May 15, 1975, May Young executed a general power of attorney in favor of petitioner naming him her agent and attorney in fact. In October *259 of 1975, pursuant to the power of attorney, petitioner transferred all of the funds on balance in several accounts in his mother's name or in their joint names to accounts in his separate name. [4] *260 The total amount thus transferred was $42,537.89. [5] The power of attorney did not specifically authorize petitioner to make a gift to himself. On February 4, 1979, Mrs. Young personally executed an affidavit stating that it had been her intention in 1975 to make a gift of the sums, stated to be $32,537.89, [6] transferred to petitioner in that year. Also in February of 1979, Mrs. Young filed a gift tax return for the calendar quarter ending December 31, 1975, *261 stating that a gift of $32,537.89 was made to petitioner on October 9, 1975. An amended gift tax return for the calendar year ending December 31, 1975, was filed by Mrs. Young on February 28, 1981, stating that the total amount of gifts made during 1975 was $42,537.89. [7] In the notice of deficiency respondent determined that for the 3 years in issue petitioner was not entitled to a dependency exemption deduction for his mother because she had annual gross income in excess of $750. Respondent further determined that because petitioner was not entitled to an exemption *262 deduction for his mother he also did not meet the requirements for head of household filing status. Finally, respondent disallowed the claimed deductions for Mrs. Young's medical expenses on the basis that her own funds and not those of petitioner were expended for this purpose. The questions presented for our decision are consistent for all 3 years in issue and are as follows: (1) whether petitioner is entitled to a dependency exemption deduction for his mother; (2) whether he is entitled to unmarried head of household filing status; and (3) whether he is entitled to a deduction for his mother's medical expenses. As to all three issues the burden of proof is on petitioner to demonstrate that respondent's determination is in error. Rule 142(a), Tax Court Rules of Practice and Procedure.
Dependency Exemption
Section 151(e)(1)(A) in effect for the taxable years in question provided a deduction for exemptions as follows: (e) Additional Exemption for Dependents.-- (1) In general.--An exemption of $750 for each dependent (as defined in section 152) [8] *263 -- (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $750. In supporting the disallowance of the dependency exemption claimed by petitioner for his mother for 1975, 1976 and 1977 respondent relies on the parties' stipulation that May Young's income during those years was $8,669.46, $6,696.47 and $7,072.26, respectively. It is clearly a threshold requirement of section 151(e)(1)(A) that a dependency exemption may not be claimed for a person who had in excess of $750 in gross income during the taxable year regardless of the amount of support provided. Section 1.151-2(a), Income Tax Regs. Accordingly, respondent is sustained on this issue. Head of Household Filing Status
Section 2(b)(1) provides in relevant part as follows: (b) Definition of Head of Household.-- (1) In general.--For purposes of this subtitle, an individual shall be considered a head of household if, and only if, such individual is not married at the *264 close of his taxable year, * * * [and] (B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151. [Emphasis added] Because the parties stipulated that petitioner's mother had gross income in excess of $750 for each of the years at issue we accordingly found that petitioner is not entitled to a dependency exemption for her under section 151. Therefore, petitioner does not qualify as a head of household as defined in section 2(b)(1) and is not entitled to compute his tax pursuant to the special rates provided in section (1)(b). See Carito v. Commissioner,54 T.C. 1614 (1970). Respondent's determination is again sustained. Deduction of Medical Expenses
During the 3 years at issue May Young and petitioner expended the following amounts for her support: Year
May Young
Petitioner
1975
$8,669.46
$ 9,087.48
1976
6,696.47
18,900.31
1977
7,072.26
22,834.22
$50,822.01
The funds used by May Young for her support consisted of her income for each year. The funds expended by petitioner for that purpose originated from accounts *265 totalling $42,537.89 [9] which, pursuant to his mother's power of attorney, petitioner transferred to his sole name in October of 1975. Section 213(a) provides in pertinent part as follows: SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income. The mother of a taxpayer is included within the definition of a dependent under section 152(a) if the taxpayer provided over half of her support for the calendar year in which the taxable year of the taxpayer begins. [10] *266 Respondent contends that May Young is not petitioner's dependent as defined in section 152 because the funds expended for his mother's support were in fact her own funds. If so, petitioner did not provide more than half of his mother's support and she does not qualify as his dependent under section 152. Thus, respondent concludes, petitioner is not entitled to deduct payments made for his mother's medical expenses under section 213. Petitioner, however, argues that because an inter vivos gift was made of the funds transferred to petitioner in October of 1975 pursuant to the power of attorney, the funds used to pay May Young's medical expenses belonged to him. Therefore, petitioner argues, he provided more than 50 percent of his mother's support and is entitled to a deduction for her medical expenses paid with those funds. As the ownership of the funds used for payment of May Young's medical *267 expenses is disputed by the parties we must decide whether there was a valid inter vivos donation of the funds to petitioner under Louisiana law. The Supreme Court of Louisiana has consistently held that an account on deposit is an incorporeal right which may be donated only by a notarial act in compliance with Article 1536 of the Louisiana Civil Code. Broussard v. Broussard,340 So.2d 1309, 1313 (1976); Vercher v. Roy,171 La. 524, 131 So. 658 (1930); Succession of Housknecht,135 La. 818, 66 So. 233 (1914). Article 1536 provides as follows: An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity. [La. Civ. Code Ann. art. 1536 (West 1977)] The transfer of the accounts and certificates to new accounts in petitioner's sole name pursuant to the power of attorney was not passed before a notary and two witnesses. We must determine, therefore, whether compliance with Article 1536 was required to transfer ownership of Mrs. Young's funds to petitioner. Petitioner argues that Mrs. Young's donative intent together with the power of attorney *268 and his possession of the account books and certificates was the equivalent of the transfer of cash or a check. As such Article 1539, which provides as follows, would be applicable: The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality. [La. Civ. Code Ann. art. 1539 (West 1977)] As authority petitioner relies on Menard v. Muhs,196 So.2d 536 (La. App. 1967). In that case the decedent had filled in the transfer form contained in the back of her optional share account book and gave the account book to one of the named assignees, Marie Muhs. Mrs. Muhs then presented the book and executed transfer form to the Homestead (a mutual company whose depositors-members are shareholders therein) which transferred the funds to a new account in the names of the assignees. The Louisiana Court Appeals, Fourth District, held that the decedent's delivery of the executed transfer form and the account book to the transferee along with her undisputed donative intent constituted a manual gift of the funds represented thereby similar to the gift of a check. We find the instant case distinguishable for several reasons. First, *269 the transfer forms were not executed by Mrs. Young personally but rather were executed by petitioner pursuant to the power of attorney. The power of attorney does not specifically authorize petitioner to make a gift to himself. In Succession of Housknecht,supra at 235, the Supreme Court of Louisiana held that such a power of attorney could not accomplish a valid manual inter vivos donation of funds on account in a bank. More importantly, we are not convinced that Mrs. Young had a donative intent at the time petitioner transferred the accounts to his name in 1975. As noted previously, respondent has not stipulated to the existence of the requisite intent on the part of petitioner's mother. Petitioner relies solely on the February 4, 1979, affidavit which states that it had been Mrs. Young's intent in October of 1975 to give the funds to her son. We note that at the time this affidavit was executed all of the funds alleged to have been gifted to petitioner in 1975 had been expended for the purported donor's medical care. Also, it was not until 1979 that a gift tax return was filed and not until 1981 that an amended gift tax return was filed reporting the correct amount of the *270 transferred funds. Both the original gift tax return and the amended return were executed by petitioner pursuant to the 1975 power of attorney. Rather than being convincing evidence of donative intent, the affidavit and the belated gift tax returns have every appearance of an afterthought. Respondent argues that Succession of Palermo,359 So.2d 1040 (La. App. 1978) is controlling on the issue before this Court. We agree. In Palermo, the Louisiana Court of Appeals, Fourth District, was presented with a factual situation very similar to the instant case. There 2 days before her husband's death, Mrs. Palermo withdrew funds deposited in banks and a savings and loan registered in their joint names and, pursuant to a power of attorney, transferred other funds in checking and savings accounts registered in her husband's name to a new account in her sole name. The court held that: even accepting as a fact that the decedent expressed his intention of giving the entire proceeds of the bank and savings and loan accounts to his wife and actually made physical delivery of the documents evidencing ownership of the accounts to her, accounts in banks and savings and loan associations are incorporeal *271 rights, which can only be the object of a donation executed before a notary and two witnesses pursuant to Article 1536. Hence, the manual donation of the passbooks and other documents was not an effective donation and the amounts involved must be returned to the corpus of the succession. [359 So.2d at 1042] [Ft. ref. omitted.] [11] In the instant case, the stipulated facts show only that petitioner transferred accounts and certificates belonging to his mother to accounts registered in his sole name, pursuant to a power of attorney. The funds were then expended by him for his mother's medical care. Even if we were to find the existence of donative intent on the part of Mrs. Young we still are compelled to hold that there was no compliance with Louisiana law regarding the inter vivos transfer of incorporeals. Therefore, ownership of the funds remained in Mrs. Young and petitioner is not entitled to a deduction under section 213 for payments made with these funds for his mother's medical care. Decision will be entered for *272 the respondent.
Footnotes
1. Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.
2. A statutory notice of deficiency for the years 1975, 1976 and 1977 was sent to petitioner by certified mail on July 21, 1980. Mr. Ruch had previously consented to extend the time for assessing the tax and has stipulated that the notice of deficiency was timely sent.↩
3. The parties stipulated that petitioner did not have sufficient funds "of his own" to meet his mother's medical expenses. Although the language of the stipulation is quite broad we assume the parties intended the stipulation to mean that the funds used to pay the medical expenses did not originate from petitioner's own earnings. Taken literally, the effect of the stipulation would result in a concession of the medical expense deduction issue by petitioner.↩
4. At Fidelity Homestead Association two optional share accounts registered in the name of Mrs. W. B. Young were cancelled upon execution of the transfer forms by petitioner as agent and attorney in fact for May Young. A new account representing the total proceeds transferred was opened solely in the name of petitioner. Also at Fidelity Homestead Association four certificates representing 68 fully paid shares registered in the name of Mrs. W. B. Young were cancelled upon execution of the transfer form appearing on the back of each certificate by petitioner as agent and attorney in fact for May Young. A new account representing the total proceeds of the cancelled certificates were opened solely in the name of petitioner. At Carrollton Homestead Association a certificate registered in the name of May Young was cancelled upon presentation of the power of attorney and execution by petitioner of the receipt form appearing on the back of the certificate. Also at Carrollton Homestead Association a certificate registered in the names of Mrs. W. B. Young or John M. Ruch was cancelled upon execution of the receipt form. An account representing the total proceeds of these two certificates was then opened solely in petitioner's name. Finally, at Guaranty Homestead Association a certificate registered in the names of Mrs. W. B. Young or John M. Ruch was cancelled upon presentation of the certificate and the written request of petitioner that the certificate be cancelled. A new certificate for the total proceeds was then issued solely in petitioner's name. 5. The total of the transferred funds is stipulated to be $42,537.84. However, other stipulations and the attached exhibits indicate that the correct total is $42,537.89.↩
6. The total of the funds listed in the affidavit is stipulated to be $32,537.84 but the correct total is $32,537.89. We note that while the parties stipulated that Mrs. Young signed the affidavit respondent specifically did not stipulate to the truth of the assertions contained therein. Thus, although the case was presented to the Court as being fully stipulated it appears that the existence of a bona fide donative intent on the part of Mrs. Young in October of 1975 is disputed by the parties. ↩
7. The gift tax return and the amended gift tax return were signed by petitioner pursuant to his mother's power of attorney.↩
8. SEC. 152. DEPENDENT DEFINED. (a) General Definition.--For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *: (4) The father or mother of the taxpayer, or an ancestor of either.↩
9. We note that the amounts expended by petitioner for his mother's support during the 3 years totalled $50,822.01 whereas the amount transferred by the power of attorney totalled only $42,537.89. The difference of $8,284.12 is not explained by the parties.↩
10. Expenses paid for the medical care of a dependent, as that term is defined in section 152, are deductible under section 213 even if the dependent had gross income in excess of the amount provided in section 151(e)(1)(A). Section 1.213-1(a)(3)(i), Income Tax Regs.↩ Therefore, the fact that May Young had gross income in excess of $750 does not of itself preclude petitioner's deduction of his mother's medical expenses.
11. See also Broussard v. Broussard,340 So.2d 1309, 1313 (1976); Succession of Vice,385 So.2d 554 (La. App. 1980); Burkes v. Barbour,364 So.2d 1059 (La. App. 1978↩).