John M. RUCH, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 82–4463.

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1983.

Charles B. Johnson, New Orleans, La., for petitioner-appellant.

Glen L. Archer, Jr., Asst. Atty. Gen., Carleton D. Powell, Michael L. Paup, Chief Appellate Section, Thomas A. Gick, Dept. of Justice, Tax Div., IRS, Washington, D.C., for respondent-appellee.

Before BROWN, WISDOM and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal requires a determination whether the transfer the Commissioner of Internal Revenue questions in this case qualifies as a donation inter vivos under Louisiana law. The Tax Court held that it did not, and sustained the Commissioner's determination that the taxpayer was not entitled to deductions under section 213(a) of the Internal Revenue Code of 1954 [26 U.S.C. § 213(a) (1982)] for his mother's medical expenses paid for with the transferred funds during the years 1975, 1976, and 1977. We reverse.

## I.

At the time this suit was brought, the taxpayer, John M. Ruch, was a resident of New Orleans, where he lived with his invalid mother, May Young. During the years in question, Mrs. Young's income was relatively modest: $8,668 in 1975; $6,696 in 1976; and $7,072 in 1977. Her medical expenses for these years, however, were far from insignificant. In 1975, John Ruch spent on his mother's behalf over $9,000 for doctor's fees, sitters, and bed rentals. This figure more than doubled the following year, and rose to over $22,000 in 1977. Because the taxpayer had insufficient funds of his own in 1975 to provide for his mother, May Young executed a general power of attorney in favor of her son on May 15 of that year naming him her agent and attorney in fact. In October 1975, acting under this power of attorney, the taxpayer withdrew all of the funds on deposit in a number of accounts registered in the name of May Young, or jointly in the names of May Young and John Ruch, and redeposited these funds in accounts solely registered in

his name.[1] The total withdrawn was $42,-537.

On his federal income tax return for the calendar years 1975, 1976, and 1977, the taxpayer asserted a dependency exemption for his mother, argued that he was an unmarried head of a household, and contended that he was entitled to deductions for the medical expenses he paid on behalf of his mother. To convince the Commissioner that the funds spent on her behalf belonged to her son and not to her, May Young executed an affidavit on February 4, 1979, stating that it had been "her intent at that time [1975] to make a gift" of all of the proceeds of the accounts withdrawn by John Ruch. She also simultaneously filed a gift tax return, and later an amended return. Nevertheless, the Commissioner asserted a deficiency, and determined that for the three years at issue the taxpayer was neither entitled to an exemption for his mother, nor to head of household status, because her annual gross income exceeded $750. The Commissioner also disallowed the claimed deductions for Mrs. Young's medical expenses on the ground that the money spent for her care was in fact her own. The deficiencies asserted for these three years totalled $4,093. The taxpayer filed a petition in the Tax Court seeking a redetermination, and the case was submitted on a stipulated record. On the basis of this record, the court sustained the deficiencies for all three years.

We review only the propriety of the Tax Court's determination that Ruch was not entitled to a medical expense deduction under section 213 of the Internal Revenue Code.[2]

1. Fidelity Homestead Association in New Orleans cancelled two optional share accounts registered in the name of Mrs. W.B. Young following Ruch's execution of the transfer forms, and opened a new account in the taxpayer's name. Fidelity also cancelled four certificates representing 68 fully paid shares and opened a new account. Carrollton Homestead Association cancelled two certificates, one in the name of May Young and another in the names of Mrs. W.B. Young or John Ruch. Carrollton then opened an account solely in Ruch's name, representing the total proceeds of these

two certificates. Guaranty Homestead Association cancelled a certificate in the names of Mrs. W.B. Young or John Ruch upon presentation of the certificate and a written request that the certificate be cancelled; a new certificate for the total proceeds was then issued in the taxpayer's name.

2. On appeal, the taxpayer has apparently abandoned the other contentions he raised in the Tax Court. In any event, we conclude that these deductions were correctly disallowed. With respect to the claimed dependency ex-

## II.

■ The Tax Court determined that Mrs. Young lacked the requisite donative intent when the accounts were transferred in October 1975. This is a finding of fact, and may not be set aside unless clearly erroneous. Nevertheless, this Court has held that when the evidence relied on below consists entirely of written evidence, such as stipulations, then

> [i]n these circumstances, though our review of these factual findings is governed as usual by the clearly-erroneous standard, the burden of establishing clear error is not so heavy as in the normal case. This follows since we view precisely the same evidence as did the trial judge, from the same vantage point, neither tribunal being aided by those advantages in assessing witness credibility that flow from observing demeanor, reactions, and manner of testifying.

*Cooper v. Department of Navy of United States,* 5 Cir.1979, 594 F.2d 484, 486, *cert. denied,* 1979, 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (citations omitted).

After reviewing the record in this case, we are left with the definite and firm conviction that a mistake has been made. We are unable to find in the record any factual basis for the Tax Court's conclusion that May Young lacked donative intent in 1975. Nor do we agree with the Tax Court's speculation that "[r]ather than being convincing evidence of donative intent, the affidavit and the belated gift tax returns have every appearance of an afterthought". The *sole* evidence before the Tax Court on donative intent was the affidavit of the taxpayer's mother. No one testified at trial, and the I.R.S. offered no evidence to refute the presence of donative intent. The affidavit, therefore, was and is uncontradicted. That it is dated February 1979 does not strike us as unusual or as evidence of an afterthought, for before this date there was clearly no need for an affidavit. Mrs. Young had not consulted an attorney and had never filed a gift tax return.

## III.

A deduction for medical expenses is permitted under section 213 of the Code for "amounts, not compensated for by insurance or otherwise" spent for the medical care of dependents. A "dependent" is defined in section 152,[3] and includes, among others, mothers of taxpayers so long as the taxpayers provide over one-half of their support.[4] Ruch argues that during the

emption, Ruch did not satisfy the threshold requirement of I.R.C. § 151(e)(1)(A) (1982), as it then provided, that the dependent not have gross income in excess of $750. And because the only dependency exemption the taxpayer claimed under § 151 was for his mother, he was not entitled to unmarried head of household filing status for any of the years at issue. *Id.* § 2(b)(1)(B).

3. Section 152 of the Internal Revenue Code defines a dependent as follows:

(a) General definition.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer):

(1) A son or daughter of the taxpayer, or a descendant of either,

(2) A stepson or stepdaughter of the taxpayer,

(3) A brother, sister, stepbrother, or stepsister of the taxpayer,

(4) The father or mother of the taxpayer, or an ancestor of either,

(5) A stepfather or stepmother of the taxpayer,

(6) A son or daughter of a brother or sister of the taxpayer,

(7) A brother or sister of the father or mother of the taxpayer,

(8) A son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law of the taxpayer, or

(9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 143, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household.

4. The expenses paid for the medical care of a "dependent", as § 152 defines that term, are deductible under § 213 even if the dependent had gross income in excess of the amount provided in § 151(e)(1)(A). *See* Treas.Reg. § 1.213–1(a)(3)(i). That Mrs. Young had gross income in excess of $750, therefore, does not of

three years at issue in this dispute he spent well over half the amount required for Mrs. Young's care. In 1975, he provided $9,087, while she paid from her separate funds $8,669; in 1976, he spent $18,900 and his mother only $6,696; in 1977, again he provided the lion's share, spending $22,834 to her $7,072. The Commissioner does not contest the amounts spent by the taxpayer, and Ruch does not dispute that the source of the funds was his mother. The parties differ on the question whether there was a valid donation of the transferred funds which would permit the taxpayer to deduct his mother's medical care expenses. For an answer to this question, we look to Louisiana law.

Article 1468 of the Louisiana Civil Code defines a donation inter vivos as "an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it". Article 1536 provides:

> An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, right or actions, under the penalty of nullity.[5]

A donation inter vivos even of "movable effects" is invalid unless an authentic act is executed. La.Civ.Code art. 1538 (1870). Article 1539 states, however, that a "manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality". Louisiana courts have typically demanded strict compliance with the form prescribed in the Civil Code. Planiol, a French commentator frequently quoted by Louisiana courts, has offered two reasons for this requirement. First, an authentic act protects the donor

from fraudulent and dominating outside influences. Second, and more important, it ensures that the donation will be irrevocable, for if the instrument is under private signature the donor has the power to cancel the donation by destroying the evidence of title. 3 Planiol, Treatise on the Civil Law No. 2525 (La.St.L.Inst.transl.1959).

■ Despite the apparent unbending language of article 1536, it is not cast-iron. The solemnity of an authentic act is not always required when an incorporeal right is donated inter vivos. Louisiana courts have subordinated article 1536 to federal interests or to other Louisiana legislation when savings bonds,[6] insurance policies,[7] and shares of stock[8] are the object of the donation. Donations of cash, bearer bonds, and checks have also been permitted to result in the transfer of the obligation without a formal notarial act. See, e.g., Succession of Byrnes, 206 La. 1026, 20 So.2d 301 (1944); Succession of Sanders, 171 La. 569, 131 So. 674 (1930); Succession of Leroy, 157 La. 1077, 103 So. 328 (1925). The courts have drawn a distinction between the corporeal document and the incorporeal credit it represents and have frequently found an authentic act necessary when some act other than delivery, such as an endorsement, is required. See Note, Donation: Optional Payment Homestead Stock May Be the Object of a Manual Donation, 30 La.L.Rev. 153, 155 (1969). In Primeaux v. Libersat, 322 So.2d 147 (La.1975), the Louisiana Supreme Court held that a donative transfer which complied with the Uniform Stock Transfer Act, La.Rev.Stat. § 12:621–43, did not have to meet the requirements of Civil Code article 1536, and quoted approvingly Planiol's statement that article 931 (the

itself preclude the taxpayer's deduction of his mother's medical expenses.

**5.** La.Civ.Code art. 1536 (1870). Article 931 of the Code Napoleon formulates the rule as follows: "All instruments which contain an *inter vivos* donation shall be concluded before a notary in the form usual for contracts, and the original will be kept on file by the notary, under the sanction of nullity." The rule was formulated by Daguesseau and first appeared in the French *Ordinance* of 1731. 3 Planiol, *Treatise*

on the Civil Law No. 2525 (La.St.L.Inst.transl. 1959).

**6.** See Succession of McCrocklin, 126 So.2d 364 (La.App.1960), aff'd, 137 So.2d 274 (La.1962).

**7.** See Catalano v. United States, E.D.La., 1968, 293 F.Supp. 1300.

**8.** See Primeaux v. Libersat, 322 So.2d 147 (La. 1975).

French counterpart of Louisiana Civil Code Article 1536) "requires the notarial form only if a special instrument is drafted to declare the donation". 3 Planiol, *Treatise on the Civil Law* No. 2533 (La.St.L.Inst. transl.1959). In a discussion relevant to our inquiry, the court went on to summarize Planiol as follows:

Planiol notes that 'it is often possible to make a donation, that means to cause someone to acquire a property value gratuitously, without drafting such a special instrument.' Section 2533, p. 236. As examples of the valid creation of a property right in a donee, without a special instrument to such effect, Planiol and Aubrey & Rau list donations through a purchase in the name of another, by assignment or endorsements of credits or negotiable instruments, by transfer of securities valid under securities law, by stipulations for a third person (the donee), by gratuitous renunciations of a right, by release of obligations, and by other means.

Planiol points out that these various transactions are valid, since in a form authorized by general law, but that 'Any transaction through which some right is assigned without the demand for a counterperformance is a donation. It is an intentional procurement of a gratuitous enrichment.' Section 2543A, p. 244. He also notes, 'In cases of purchase in the name of another person, the object of the donation is not the acquired property, but the cash paid for it. It is an equivalent of an indirect manual gift, relieving the nominal purchaser from the payment of the price. One could say this is a payment made *cum animo donandi* [with the intention of giving].' [3 Planiol No. 2545, p. 245].

322 So.2d at 152.

We conclude from our reading of the Louisiana jurisprudence that a valid donation inter vivos occurred in this case. When Mrs. Young executed the general power of attorney and appointed the taxpayer her agent and attorney in fact, she made a payment *cum animo donandi* and intention-ally procured a gratuitous enrichment for him. The donation was complete when Ruch subsequently exercised the power of attorney and withdrew the funds on deposit, converted them into cash, and redeposited them solely in his name. We regard the requirement of article 1536 that there must be a notarial act to accomplish a valid donation of incorporeal things—here, optional share accounts and fully paid shares registered at a number of homestead associations—as inapplicable to the donation of the proceeds of shares withdrawn under a valid power of attorney. What Mrs. Young gave her son was not the accounts, admittedly an incorporeal under Louisiana law, but the right to withdraw the cash in the accounts. Once Ruch withdrew the proceeds of the shares registered at the homesteads, he had received a gift of cash which, under article 1539, is not subject to any formality. *See Menard v. Muhs,* 196 So.2d 536, 538 (La. App.1967) in which the court held that the giving of an optional share account book of a homestead was a manual gift of the corporeal movable, money; the transfer form and account book were simply the "vehicle" of delivery. *Id.* at 539.

Although article 1539 is couched in terms of "corporeal movable effects accompanied by a real delivery", Louisiana law has recognized so-called indirect donations, those where a third party transfers the object of the donation to the donee at the donor's order, as valid. In *Succession of Gorman,* 209 La. 1092, 26 So.2d 150 (1946), the Louisiana Supreme Court faced a problem similar to the one we now confront. There, the donor before her death executed a power of attorney authorizing her half-sister to withdraw her funds from a savings account in a bank. The sister later withdrew all the money on deposit, and the donor died soon thereafter. In upholding the donation, the court noted that "[i]t would have been an idle ceremony for Mrs. Muller after withdrawing the money from the bank to hand it to Mrs. Gorman, the donor, so that Mrs. Gorman in turn might give it to Mrs. Muller, the donee. The law takes no account of useless formalities. In order to complete the manual gift it suffices that the will of

the donor to give and the actual possession of the movable property by the donee operate simultaneously". 26 So.2d at 151. The court went on to state:

The mere circumstance that a person authorizes another to withdraw his funds from a bank under a power of attorney does not of itself constitute a donation of the funds, but if the evidence satisfactorily shows that the power of attorney was executed as one of the means of establishing a donation of the funds and the volition of the donor to make the gift is still in operation at the moment the donee actually receives the money from the bank, there would seem to be no good reason for holding the donation to be invalid.

*Id.* at 152.

We conclude that, under *Gorman,* this is a proper case for holding the donation valid. May Young's affidavit, executed in 1979, stated that it had been her intention in 1975 to make a gift of the funds. The uncontradicted evidence shows, therefore, that the taxpayer's mother not only had the requisite donative intent when she created the power of attorney, but also that it was in existence when she executed the affidavit. And if the intent existed at point (a) on May 15, 1975, and again at point (c) on February 4, 1979, the conclusion should be drawn that it also existed at point (b) during October 1975 when the taxpayer exercised the power. Given that the substantive requirements of divestment and donative intent were met, we can find no reason to find the donation invalid.

The Commissioner's reliance on *Succession of Housknecht,* 135 La. 818, 66 So. 233 (1914), for the proposition that a power of attorney cannot by inference accomplish a valid inter vivos donation of funds on account in a bank or in a homestead is misplaced. Not only was *Housknecht* undermined by *Gorman,* it is distinguishable from the case before us. It is true that the donor in *Housknecht* executed a power of attorney in favor of her daughter, and that the court held that there was no manual gift. But as the court in *Gorman* pointed

out, in *Housknecht,* the donee's authority under the instrument was solely that of an agent, and she received the money from the bank in that capacity and not as an assignee or transferee of her principal. Moreover, the donee did not rely on the power of attorney to establish the donation, but on a letter written by her mother to the president of the bank in which she requested that her account in the bank be transferred to her daughter. In this case, as in *Gorman,* the power of attorney was executed as the "vehicle for delivering a corporeal movable effect, money". *Menard v. Muhs,* 196 So.2d 536, 539 (La.App.1967).

Nor do we find any merit in the Commissioner's contention that *Succession of Palermo,* 359 So.2d 1040 (La.App.1978), controls the issue before this Court. There, two days before her husband's death, Mrs. Palermo withdrew funds on deposit in a number of banks and a savings and loan company registered jointly in her name and her husband's name, and, acting under a power of attorney, transferred these funds to a new account registered solely in her name. The Louisiana Court of Appeal, Fourth Circuit, held:

even accepting as a fact that the decedent expressed his intention of giving the entire proceeds of the bank and savings and loan accounts to his wife and actually made physical delivery of the documents evidencing ownership of the accounts to her, accounts in banks and savings and loan associations are incorporeal rights, which can only be the object of a donation executed before a notary and two witnesses pursuant to Article 1536. Hence, the manual donation of the passbooks and other documents was not an effective donation and the amounts involved must be returned to the corpus of the succession.

*Id.* at 1042. In relying on *Palermo,* the Commissioner ignores a critical fact absent in that case but present here. Although there was evidence of donative intent when Mr. Palermo made the manual donation of the passbooks and other documents to his wife, there was no evidence of donative

intent once the funds had been withdrawn. As Judge Lemmon pointed out in his concurring opinion, "[s]ince the assets were in the form of credits (which are incorporeal things and not susceptible of manual gift) at a time of the attempted donation, the donation was invalid for lack of form. *A tougher question would have been presented if the evidence established that [the] decedent, after some of the credits were converted to cash, had expressed his desire for his wife to have this cash, without physically handing the cash to her. But this case does not present the issue of whether a 'manual gift' under C.C. art. 1539 can be validly accomplished by the donor stating donative words and the donee receiving from a third party's hand the thing susceptive of manual delivery".* *Id.* (emphasis added). Here, unlike *Palermo,* the donor expressed her intent that the donee receive the proceeds of her accounts *after* they had been withdrawn, converted to cash, and redeposited. Mrs. Young gave her son the right of access to her accounts, to convert them to whatever use he may have desired. Once those accounts were converted with her approval, what she gave was not credits, but cash, a corporeal thing under article 1539 subject to no formality other than delivery. And, under *Gorman,* it matters not that the actual donation susceptive of manual delivery was received by the donee from a third party's hand.

### IV.

Even assuming that the transfer of the funds was valid under Louisiana law, the Commissioner contends that the taxpayer is still not entitled to the deductions claimed under section 213(a) of the Internal Revenue Code. Section 213 allows a deduction for expenditures for medical care "not compensated for by insurance or otherwise". Here, the taxpayer stipulated that "[t]he money used to make these expenditures came from funds transferred by . . . [his mother] to . . . [him] in October of 1975." Because Ruch suffered no out-of-pocket expense for his mother's care and support, but was instead reimbursed for the expenditures he made, the Commissioner argues that he cannot deduct the expenses under section 213, even though the transfer of the funds was in the form of a donation inter vivos. *See Litchfield v. Commissioner,* 1 Cir.1964, 330 F.2d 509, and *Jewell v. Commissioner,* 69 T.C. 791, 799 (1978).

We disagree with the Commissioner. Unlike the taxpayers in *Litchfield* and *Jewell,* the taxpayer in this case was under no obligation, other than a moral one, to provide for his mother's medical support. There was also no after-the-fact reimbursement here as there was in *Litchfield.* When May Young gave her son her power of attorney in 1975, she in effect authorized the taxpayer to do anything he wished with her funds. After he exercised the power, he chose to spend these funds on his mother, as many others would do in similar circumstances. Ruch, however, was not contractually bound to do so.

Accordingly, the judgment of the Tax Court finding no valid donation inter vivos under Louisiana law and denying the deductions under section 213 of the Internal Revenue Code is REVERSED.